DA 09-0525

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 99

ONLY A MILE, LLP, a Montana Limited Liability Partnership,

       Plaintiff and Appellant,

  v.

STATE OF MONTANA and MISSOULA COUNTY,

       Defendants and Appellees.

APPEAL FROM:    District Court of the Fourth Judicial District,
                 In and For the County of Missoula, Cause No. DV 2003-1016
                 Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Fred Simpson, Stefan W. Farr, Bohyer, Simpson & Tranel, PC,
              Missoula, Montana

       For Appellee State of Montana:

              Tommy H. Butler, Mark C. Phares, Special Assistant Attorney General,
              Montana Department of Natural Resources and Conservation,
              Helena, Montana

       For Appellee Missoula County:

              Fred Van Valkenburg, Missoula County Attorney, D. James McCubbin,
              Deputy County Attorney, Missoula, Montana

Submitted on Briefs: April 8, 2010

Decided: May 4, 2010

Filed:

_____
                      Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 This appeal arises out of a right-of-way dispute in eastern Missoula County, near Ovando, Montana. Only A Mile (OAM), a limited liability partnership, sued to quiet title against the State of Montana and others who might claim an interest in the disputed property that once constituted an old county roadway right-of-way. Following a bench trial, the Fourth Judicial District Court entered judgment for the State. OAM appeals. We affirm.

## ISSUE

¶2 The issue on appeal is whether the District Court erred in holding that the public, including the State of Montana, has access to a particular section of land, via the right-of-way for the petitioned county road known as Old Blanchard Road (the road).

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 To resolve this issue, the District Court and the parties examined in detail the history of the road's creation and numerous maps developed during the road's use. The road was created through a petition for a new county road submitted to Deer Lodge Commissioners in 1893. According to the petition, this road, to become known as Old Blanchard Road, was to commence near the banks of the Blackfoot River and the mouth of the Clearwater River. The road was to travel due north from the Blackfoot River through Section 9 of Township 14 North, Range 14 West and into Section 4 of Township 14 North. The 1893 description then provides that the road run "easterly through part of Section 4 and Section 3 . . . and northeasterly through Section 35." The petition was granted in 1894 and the road was created in 1895. In addition to the 1893 petition, the

2

1894 grant of the petition, and an 1895 written report reflecting examination of the completed road, the parties and the court reviewed, among other things, copies of the following: the 1884 General Land Office Survey, a 1902 USGS map, a 1906-1910 Powell County survey, a 1915 Big Blackfoot Railway Company right-of-way map, a 1938 aerial photograph, and maps created by the expert witnesses reflecting their interpretations of the historic path of Old Blanchard Road.

¶4 The section of the road central to this claim ran near or through the 4-point intersection (hereinafter referred to as "common corner") of Sections 34 and 35, Township 15 North, Range 14 West and Sections 2 and 3, Township 14 North, Range 14 West. The following not-to-scale diagram illustrates the relationship of the contiguous section parcels and the location of the disputed road area.

| | | |
|---|---|---|
| Section 34<br>North | | Section 35 |
| Disputed area | Only a Mile | |
| Old Blanchard Road<br><br>Section 3 | State of Montana<br><br>Section 2 | |

¶5 The road is overgrown and no longer in general use; however, it is undisputed that it was never formally abandoned and therefore "remains" a county road with a 60-foot right-of-way in the location of its original placement. OAM testified that there are several roads in the area of the common corner, including the road used to access OAM's

property, but argues there is no clear evidence of the precise location of the Old Blanchard Road. The sole disputed issue is whether Old Blanchard Road passed to the north or the south of the common corner.

¶6    Section 2 is State Trust Land and the State requires access to the property to manage it. The State's management of the property and the public's access to the property for recreational purposes provides revenue for public education. In 1999, OAM acquired most of the southwest quarter of Section 35 from former owner, Walter Vannoy. OAM did not know of the old road at the time of purchase nor did Vannoy mention it. According to evidence presented, the State has accessed Section 2 for many years by permission from Vannoy and later from OAM. However, at some time before December 2003, the State and OAM disagreed whether the historic road crossed or touched any portion of Section 2. If the road intersected Section 2, then the State would be authorized to access its property without OAM's permission. In December 2003, OAM filed a claim to quiet title against the State of Montana and any others seeking to claim an interest in the disputed property.

¶7    OAM claimed below and claims on appeal that Old Blanchard Road traveled in a northeasterly direction across Section 3, crossing into Section 34 before the common corner and then passing directly into Section 35; in other words, it did not connect with any State property boundary line. It maintains that because the road never ran onto or across the State's Section 2 property, the State may not access its land through OAM's road without permission.

4

¶8    The State argued that the Old Blanchard Road progressed northeast through Section 3 until just south of the boundary line between Section 3 and Section 34 at which time it turned directly east, running approximately parallel to the boundary line between Sections 3 and 34.  After crossing into the upper northwest corner of Section 2, just south of the common corner, the road then turned northeasterly into Section 35.  Because the road historically passed through Section 2 or along its boundary line, the State opined that it had continued right to access its property via the roadway.

¶9    Ultimately, in May 2009, the District Court held a bench trial during which it conducted a site view of the property and heard expert testimony offered by both parties. The court also reviewed numerous maps and historic documents before reaching the conclusion that Old Blanchard Road in the 1800s would have followed the straighter, flatter route along the Section 3 boundary line with Section 34 and into Section 2 before turning northward. The court noted that a sloped rise in topography at the southeast corner of Section 34, as evidenced by a 1938 aerial photograph, would have made cutting across that corner of Section 34 a less desirable roadway path.  As such, the court concluded, the road must have traveled along or through Section 2.  In August 2009, it entered judgment for the State.  OAM filed a timely appeal.

**STANDARD OF REVIEW**

¶10   We review the findings of fact in a civil bench trial to determine whether they are supported by substantial credible evidence.  We review such evidence in a light most favorable to the prevailing party, and leave the credibility of witnesses and weight assigned to their testimony to the determination of the district court.  *In re Water*

5

*Complaint of Kelly*, 2010 MT 14, ¶ 25, 355 Mont. 86, 224 P.3d 640, citing *Luppold v. Lewis*, 172 Mont. 280, 284, 563 P.2d 538, 540-41 (1977). We review a district court's conclusions of law in this context for correctness. *Kelly*, citing *DeNiro v. Gasvoda*, 1999 MT 129, ¶ 9, 294 Mont. 478, 982 P.2d 1002.

## DISCUSSION

¶10 *Did the District Court err in holding that the public, including the State of Montana, has access to a particular section of land, via the right-of-way for the county road known as Old Blanchard Road?*

¶11 The evidence in this case consists of documents and maps that date back as far as 125 years. It also consists of deposition testimony by two elderly men who lived on property located in the relevant plat sections since 1918 and 1936 respectively. Both the State and OAM presented instructive, but conflicting, expert testimony and interpretation of maps and surveys. A detailed recitation of this evidence, however, is unnecessary for our purpose. As noted above, our role is to determine whether the District Court's findings are supported by substantial credible evidence when reviewed in a light most favorable to the prevailing party; in this case, the State. We do not reweigh the evidence presented nor do we judge the credibility of the witnesses, nor do we review the evidence to determine if it supports a different decision than that reached by the court. *Combs-DeMaio Living Trust v. Kilby Butte Colony, Inc.*, 2005 MT 71, ¶ 9, 326 Mont. 334, 109 P.3d 252. Applying this standard, our review of the record and the evidence indicates that the District Court's ruling is supported by the 1893 petition for the roadway, the 1902 USGS map, the 1915 railroad map, and the 1938 aerial photograph. It is further supported by the testimony of the State's expert witness and the District Court judge's

viewing of the property.  Accordingly, notwithstanding conflicting evidence, there is substantial credible evidence to support the District Court's decision.

## CONCLUSION

¶12     For the foregoing reasons, we affirm the District Court's ruling.


/S/ PATRICIA O. COTTER


We concur:


/S/ W. WILLIAM LEAPHART
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JIM RICE