DA 13-0401

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 110

JAY C. LYNDES,

        Plaintiff and Appellant,

   v.

CYNTHIA R. GREEN, CHARLIE GREEN,
and HERTZLER RANCHES, LLC,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Sweet Grass, Cause No. DV 2011-27
Honorable Brenda Gilbert, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Kelly J. Varnes, Hendrickson Law Firm, P.C., Billings, Montana

        For Appellees:

        Michael McGuinness, Patten, Peterman, Bekkedahl & Green, Billings,
Montana

                   Submitted on Briefs:  January 22, 2014
                           Decided:  April 25, 2014

Filed:

               _____
                          Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Jay Lyndes appeals from the District Court's Findings of Fact and Conclusions of Law filed April 10, 2013. We affirm in part, and reverse and remand in part.

¶2 Lyndes presents the following issues for review:

¶3 Issue One: Whether the District Court erred in determining that the defendants (collectively referred to as the Hertzlers) established a prescriptive easement across Lyndes' property, and the scope of the easement.

¶4 Issue Two: Whether the District Court erred in determining the costs awarded to Hertzlers.

## PROCEDURAL AND FACTUAL BACKGROUND

¶5 In October 2011 Lyndes brought the present action seeking to exclude the Hertzlers from crossing property that he owns, referred to as Section 27, and claiming damages for trespass. Hertzlers counterclaimed for a declaration that the road across Section 27 was a public road or alternatively for a declaration that they had a prescriptive easement to use the road. The District Court conducted a bench trial on January 15-16, 2013, and subsequently issued its Findings of Fact and Conclusions of Law. The following are pertinent facts as found by the District Court.

¶6 Plaintiff Jay Lyndes owns property in rural Sweet Grass County, including Section 27, which he leased in 1995 and purchased in 1998. The Hertzlers also have land in the same area, abutting Section 27, which they have owned and used as a cattle ranch since 1973. The present case involves a dispute with Lyndes over whether the Hertzlers have the right to cross Section 27 to move cattle and to conduct other ranching operations on their

2

adjacent property. Shortly after Lyndes purchased the land he learned from the seller Dave Jolly that the Hertzlers had "always crossed Section 27 with their cattle" and to conduct other ranching and recreational activities on their own land.

¶7 Lyndes had a confrontation with Ray Hertzler on or near Section 27, accused him of hunting on Lyndes's property, and told him to stay out. After Lyndes chained and locked the gate on the ranch road leading through Section 27 Ray Hertzler called Lyndes to protest the closure, and "asserted his right to access Section 27." In response, Lyndes placed a key to the gate under a rock so that Hertzler could open the gate and cross Section 27. This situation lasted until 2009-2010, when Ray Hertzler became incapacitated and his daughter Cynthia Green and her husband began active involvement in the Hertzler ranching operation. The Greens had numerous confrontations with Lyndes's ranch employees over their asserted right to access Section 27. When a Lyndes employee confronted the Greens as they rode on horses through Section 27, they asserted that they "have the right to be on this road." The Greens began cutting Lyndes's chains on the gate into Section 27 whenever they encountered them. At one point they installed their own lock on the Section 27 gate but later found it smashed and inoperable. The Greens asserted to Lyndes or his hired men that they had a right to cross Section 27 and acknowledged cutting the chains. The District Court found that the evidence at trial "did not establish that Mr. Lyndes, during his period of ownership of Section 27 ever precluded [Hertzlers'] use of the access road for a continuous five year period, or at all."

¶8 The ranch road at issue was part of the historic Bozeman Road that connected Ft. Laramie and the Platte River to the new gold fields and settlements in Montana in the early

1860s. The road had limited use by migrants at that time, and the District Court found that it was never established as a public road under state or federal law. That determination is not an issue on appeal. The portion of the road that traverses Lyndes's Section 27 leads only to Hertzlers' property and provides the only reasonable access for moving cattle and other ranching operations. The Hertzlers used the road through Section 27 ten to twelve times a year to move cattle to and from their land in the spring and fall, and to access their land for fencing, tending cattle, cutting wood, hunting on their own land and other activities. The Hertzlers did so on a continuous basis since buying their ranch in 1973 and continued doing so after Lyndes bought Section 27.

¶9      The relevant landowners, including Lyndes's predecessors in ownership of Section 27, and other landowners whose property the Hertzlers traversed to get to and from Section 27, were well aware of Hertzlers' long-standing use of the trail to access their property. Hertzlers never asked for or received permission from any landowner, including Lyndes's predecessors in interest, to access Section 27 and to cross it for ranching and other purposes.

¶10     Prior to Lyndes's purchase of Section 27, none of the other landowners protested or tried to stop Hertzlers from exercising this right of access. Neighboring landowners testified that they believed that Hertzlers had a right to cross the land, including Section 27, because doing so was essential to their ranching operation. Sonny Todd owned the land now owned by Lyndes prior to 1976. Todd testified that Hertzlers used the road through Section 27 and did so without asking permission. Since the 1970s Hertzlers moved their cattle through Greg Keller's property on the way to Section 27 both before and after Lyndes bought his land. He

4

testified that Hertzlers never asked permission and that he felt that "they have a right to get to their land." Jo Ann Jolly, daughter of the owner who sold Lyndes his land, testified that her father never gave Hertzlers permission to cross the property nor did they seek it. She believed that "the Hertzlers had a right of way."

¶11 The District Court concluded from the evidence admitted at trial that Hertzlers established the elements of a prescriptive easement before Lyndes ever owned Section 27. The District Court found that "the testimony was *un-refuted* that the [Hertzlers] used the access road openly and notoriously over a period of forty years." (Emphasis added.) The District Court found from the evidence admitted at trial that Hertzlers had "used the access road at issue for far longer than the statutory period of five years, before [Lyndes] purchased Section 27."

¶12 The District Court found that Hertzlers had established all the necessary elements by clear and convincing evidence. The un-refuted testimony was that Hertzlers used the Section 27 road openly and notoriously for over forty years. While other landowners, including Lyndes's predecessors in ownership, acquiesced in Hertzler's right to use the road, they never granted any permission nor did Hertzlers ever seek permission to cross Section 27 to access their property. Hertzlers' use of the road did not depend upon any use by others and was under their express claim of right to do so and acknowledgment of that claim by the other landowners. After Lyndes appeared, Hertzlers continued to use the access under a claim of right, despite Lyndes' efforts to lock them out and despite his verbal warning that he has more money and does not mind suing people.

5

¶13 The District Court found that Lyndes never extinguished Hertzlers' prescriptive right by precluding them from using the access "for a continuous five year period, or at all." After Lyndes bought Section 27, Hertzlers "continued to openly use the access as they had always done and left cut chains and locks and tracks evidencing their use." The District Court concluded that Hertzlers had established a prescriptive right to cross Section 27 for their ranching and other uses of their adjacent land.

## STANDARD OF REVIEW

¶14 We review a district court's conclusions of law to determine whether they are correct. *Olson v. Jude*, 2003 MT 186, ¶ 34, 316 Mont. 438, 73 P.3d 809. We review a district court's findings of fact to determine whether they are clearly erroneous. *Brimstone Mining, Inc. v. Glaus*, 2003 MT 236, ¶ 20, 317 Mont. 236, 77 P.3d 175. A finding of fact may be clearly erroneous if it is not supported by substantial evidence in the record; if the district court misapprehended the evidence; or when our review of the record leaves this Court with the definite and firm conviction that a mistake has been made. *Brimstone*, ¶ 20.

¶15 The district court is in the best position to observe and determine the credibility of witnesses and we will not second guess its determination regarding the strength and weight of conflicting testimony. *Tomlin Enterprises, Inc. v. Althoff*, 2004 MT 383, ¶ 22, 325 Mont. 99, 103 P.3d 1069; *Shors v. Branch*, 221 Mont. 390, 399, 720 P.2d 239, 245 (1986). On appeal, when determining whether the trial court's findings are supported by substantial credible evidence, we will view the district court's findings of fact in the light most favorable to the prevailing party, *Tomlin*, ¶ 22. The district court's findings will be upheld even if the evidence could have supported different findings. *Brimstone*, ¶ 20.

6

**DISCUSSION**

¶16    Issue One: Whether the District Court erred in determining that Hertzlers established a prescriptive easement across Lyndes' property, and the scope of the easement.

¶17    A party seeking to establish a prescriptive easement must prove, by clear and convincing evidence, that there was open, notorious, exclusive, adverse, continuous and uninterrupted use for five years. *Schmid v. Pastor*, 2009 MT 280, ¶ 11, 352 Mont. 178, 216 P.3d 192. A prescriptive easement claim may be defeated by proof that the use was permissive. *Brown & Brown v. Raty*, 2012 MT 264, ¶ 19, 367 Mont. 67, 289 P.3d 156. The District Court correctly noted that a prescriptive claim "must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land." If the claimant establishes the elements of prescriptive use, there is a presumption that the use is adverse to the servient estate and the burden shifts to the owner of the servient estate to show that the use was permissive. *Brimstone*, ¶ 21.

¶18    There is no evidence that Hertzlers used the road through Section 27 by express permission at any time before Lyndes bought the land. Lyndes contends that Hertzlers' use of the road across Section 27 began as a permissive neighborly accommodation, and therefore could not ripen into a prescriptive easement. Montana law recognizes that land use based upon "mere neighborly accommodation" is not adverse use and cannot ripen into a claim for a prescriptive easement. *Public Lands Access Assoc. v. Boone & Crockett Club*, 259 Mont. 279, 284, 856 P.2d 525, 528 (1993).

¶19    However, it is well established that a landowner's passive acquiescence to another's use of his land is not evidence of permissive use. *Brown & Brown*, ¶ 20. In *Cremer v.*

7

*Cremer Rodeo Land and Livestock Co.*, 192 Mont. 208, 627 P.2d 1199 (1981), this Court

held that

> Implied acquiescence is not the same as permission. On the contrary, possession has been held to be adverse where possession was with forbearance of the title holder who was aware of another's possession and failed to prohibit it. Therefore, possession may be adverse even though the owner does not interfere with entry and the possessor understands there will be no future interference with his possession.
>
> In 1949 the Minnesota court capsulized the crucial distinction between "acquiescence" and "permission" as it exists with regard to the law of adverse possession: "It must be apparent, therefore, that 'acquiescence' and 'permission' as used in the connection are not synonymous. 'Acquiescence' regardless of what it might mean otherwise, means, when used in this connection, passive conduct on the part of the owner of the servient estate consisting of failure on his part to assert his paramount rights against the invasion thereof by the adverse user. 'Permission' means more than mere acquiescence; it denotes the grant of a permission in fact or a license."

*Cremer*, 192 Mont. at 211-12, 627 P.2d at 1201 (internal citations omitted). *Followed in*

*Brown*, ¶ 20; *Pederson v. Ziehl*, 2013 MT 306, ¶ 17, 372 Mont. 223, 311 P.3d 765.

¶20 The District Court found and concluded that the evidence admitted at trial supported

establishment of Hertzlers' prescriptive right in the years between 1973 and 1995, before

Lyndes purchased Section 27.[1] There was no evidence that the Hertzlers' use of the road

during that time was with any landowner's express permission and there is no evidence that

Hertzlers ever sought any permission. Prior to Lyndes, the other landowners were aware of

Hertzlers' use of the road and acknowledged their claim of right to do so. The Hertzlers'

submitted testimony of others familiar with the land in question that their use of the road

through Section 27 was based upon their claim of right to do so, and not upon the permission, license or custom of the neighbors. Before "neighborly accommodation" can defeat a claim of prescriptive right, the use of the land must arise from that accommodation. *Heller v. Gremaux*, 2002 MT 199, ¶ 14, 311 Mont. 178, 53 P.3d 1259. Here, the evidence regarding the use of the road through Section 27 supports the District Court's conclusion that Hertzlers' use began with a claim of right that the neighbors did not contest.

¶21 Lyndes acknowledges that the access through Section 27 was used before he bought the property; that the prior owners knew of the use; and that no permission was sought or given. The evidence was that the affected landowners (the owners of Section 27 before Lyndes and the owners of adjacent land crossed by Hertzlers) raised no objection to Hertzlers' use of the road because they believed that Hertzlers had the right to access their own land. In particular, the two owners of Section 27 prior to Lyndes never objected to Hertzlers' use of the road because they believed Hertzlers had the right to do so.

---

[1] There was evidence that the prior owner of Hertzlers' ranch also accessed the ranch property through Section 27 for many years prior to 1973. Prescriptive actions by a predecessor owner inure to a later owner. *Brimstone*, ¶ 33.

¶22 The fact that these landowners did not fight Hertzlers over the use of the road because they wanted to get along and be good neighbors does not transform Hertzlers' claim into one based upon mere neighborly accommodation. It is established that the proponent of a prescriptive easement and the owner of the servient tenement can cooperate and avoid conflict without defeating the claim of prescriptive right. *Brimstone*, ¶ 41; *Brown & Brown*, ¶ 26. To the contrary, persons in such a situation should be commended for exhibiting cooperation rather than confrontation. Hertzlers claimed a right to use the road and that right was acknowledged and not resisted by the other landowners.

¶23 Lyndes contends that Hertzlers' use of the road through Section 27 was not open and notorious. He relies primarily upon events that happened after he bought the land, which are largely irrelevant in the face of the District Court's determination that Hertzlers had perfected a prescriptive easement before that time. It was clear from the evidence at trial that the landowners prior to Lyndes who were affected by Hertzlers' use of the easement were well aware of the use and of its nature and extent. To the extent that Lyndes knowledge of Hertzlers' use is relevant, the clear evidence was that during the time of Lyndes' ownership there were numerous interactions or confrontations between Lyndes' employees and the Hertzlers over the access. The District Court was in the best position to observe and determine the credibility of witnesses and we will not second guess its determination regarding the strength and weight of conflicting testimony. *Tomlin*, ¶ 22; *Shors*, 221 Mont. at 399, 720 P.2d at 245.

¶24 Similarly, Lyndes' evidence concerning his cooperation with Ray Hertzler by locking the gate but providing a key for a period of time does not defeat the claim of a prescriptive

10

easement. By that time, as the District Court found, the easement had been perfected. The proponent of a prescriptive easement and the owner of the servient tenement can cooperate and avoid conflict without defeating the claim of prescriptive right. *Brimstone*, ¶ 41; *Brown & Brown*, ¶ 26. Lyndes' contention that Hertzlers' use of the easement was not continuous is belied by the clear evidence in the record that the use of the road began prior to 1973 and continued regularly without interruption, as found by the District Court. Last, even though a prescriptive easement may be lost by "reverse adverse possession," *Brimstone*, ¶ 37, the adverse re-possession must be for the five years required to establish adverse possession, and the District Court properly rejected this contention.

¶25 On appeal, this Court reviews the trial court's findings to determine whether they are supported by substantial credible evidence, viewing the district court's findings of fact in the light most favorable to the prevailing party, *Tomlin*, ¶ 22. The district court's findings will be upheld even if the evidence could have supported different findings. *Brimstone*, ¶ 20. Here the District Court conducted the trial, heard all of the testimony, and made extensive findings of fact. This Court will not second guess the District Court's determination regarding the strength and weight to be given to conflicting testimony and will not re-weigh the evidence to determine whether it supports a different conclusion. *Wareing v. Schreckendgust*, 280 Mont. 196, 210, 930 P.2d 37, 45-46 (1996); *Only a Mile v. State*, 2010 MT 99, ¶ 11, 356 Mont. 213, 233 P.3d 320. The District Court's findings are based upon substantial credible evidence and therefore should be upheld even if they might have supported a different result.

11

¶26 Alternatively, Lyndes contends that the District Court erred in determining the scope of Hertzlers' easement. The District Court determined that Hertzlers were entitled to continue their historical use of the easement to "access by vehicle to fix fence, spray weeds and haul logs; by vehicle or horseback to access their land for personal hunting (but not guided hunting); and by vehicle or horseback to move cattle to and from their land; and to access their land, as needed, to check cattle." Lyndes contends that this exceeded the Hertzlers' use of the road, which he contends to have been only a "couple of times a year" to move cattle.

¶27 The scope of a prescriptive easement is measured by the extent of use made during the prescriptive period. *Brown*, ¶ 31. Established use of a prescriptive easement does not have to be constant, but rather arises from the easement holder's use "whenever they desired." *Brown*, ¶ 34. As in *Brown*, the Hertzlers established through clear evidence that they used the road through Section 27 not only to move cattle to and from pasture, but also for other ranch work and recreational purposes on their adjacent property. The District Court properly determined the scope of the easement based upon the evidence in the record.

¶28 Issue Two: Whether the District Court erred in determining the costs awarded to Hertzlers.

¶29 Hertzlers are entitled to an award of costs as the prevailing party, § 25-10-102, MCA, and the allowable costs are specified in § 25-10-201, MCA. Lyndes objects to a number of the items of costs allowed to Hertzlers, and on appeal Hertzlers conceded Lyndes's argument on several of those items. Hertzlers' revised claim for costs is as follows:

Court Appearance Fee                    $210.00

12

| | |
|---|---|
| Service of John Axline | $20.00 |
| Witness fee, John Axline | $15.00 |
| JoAnne Jolly Witness Fee | $42.50 |
| Donald David Todd Witness Fee | $15.00 |
| Photocopies | $174.40 |
| Selby's Exhibits | $95.85 |
| Hendrickson Law Firm Copies | $118.52 |
| Kinko's color copies | $174.00 |
| Deposition Trans. C. Green | $232.62 |
| Deposition Trans. Lyndes, White | $597.73 |
| Jerry Breklee wit. fee & mileage | $102.06 |
| Larry Lahren wit. Fee & mileage | $51.03 |
| Total: | $1848.71 |

Lyndes did not object to this corrected statement of costs in his reply brief on appeal.

¶30 A district court examining a request for an award of costs should exercise its sound discretion, and should apply § 25-10-201, MCA, and the guidelines set out in *Thayer v. Hicks*, 243 Mont. 138, 793 P.2d 784 (1990) and *Springer v. Becker*, 284 Mont. 267, 943 P.2d 1300 (1997). We cannot determine from the list of costs recited above whether all of them should be awarded under the statute, or as provided in *Thayer* and *Springer*. Therefore, we remand this matter to the District Court to reconsider the costs that should be awarded to Hertzlers.

¶31 This matter is remanded for the sole purpose of allowing the District Court to enter a corrected award of costs to Hertzlers, but is otherwise affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ PATRICIA COTTER
/S/ BETH BAKER

13

/S/ JIM RICE

Justice Laurie McKinnon, dissenting.

¶32     In my view, the Court departs from our precedents under which we have found, on similar facts, that "neighborly accommodation" defeats a claim of adverse use. I believe we err, as did the District Court, in determining that a private prescriptive easement was created before Lyndes purchased his ranch in 1995. After a careful review of the trial testimony, the evidence supports only one finding: that the Hertzlers' use was permissive and by neighborly accommodation. I dissent from the Court's contrary holding.

¶33     "'The mere use of a way for the required time is generally not sufficient to give rise to the presumption of a grant, and generally some circumstances or act, in addition to the use, tending to indicate that the use was not merely permissive, is required.'"[1]    *Wilson v. Chestnut*, 164 Mont. 484, 490, 525 P.2d 24, 27 (1974) (quoting *Thompson on Real Property (Easements)* vol. 2, § 345 (1961 Replacement)); *accord Heller v. Gremaux*, 2002 MT 199, ¶ 14, 311 Mont. 178, 53 P.3d 1259; *see also Leisz v. Avista Corp.*, 2007 MT 347, ¶ 16, 340 Mont. 294, 174 P.3d 481 (unexplained use of land cannot form a basis for a claim of

_____

[1] The original theory underlying prescriptive easements was that "[i]f a particular use had long existed, it was presumed that a grant authorizing such use had been made, but that the grant itself had been lost." Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* § 5:1, 5-8 (Thomson Reuters 2013); *accord Ferguson v. Standley*, 89 Mont. 489, 500, 300 P. 245, 250 (1931) ("prescription is founded upon the supposition of a grant"). Courts generally have abandoned the presumption-of-a-grant theory in favor of the philosophy that a diligent user should be rewarded at the expense of a careless landowner. Nevertheless, terminology such as "the presumption of a grant" still remains in the caselaw of prescriptive easements. Bruce & Ely, *The Law of Easements and Licenses in Land* § 5:1, 5-5, 5-9 to 5-10. There is a separate presumption that if the claimant shows open, notorious, exclusive, continuous, and uninterrupted use, then it is presumed that the use was also adverse, and the burden shifts to the landowner to show that the use was permissive. Opinion, ¶ 17; *Larsen v. Richardson*, 2011 MT 195, ¶ 57, 361 Mont. 344, 260 P.3d

14

prescriptive right). A use of a neighbor's land based on mere neighborly accommodation or courtesy is not adverse and cannot ripen into a prescriptive easement. *Wilson*, 164 Mont. at 491, 525 P.2d at 27. Thus, "'where the use of a way by a neighbor was by express *or implied* permission of the owner, it was held that the continuous use of the way by the neighbor was not adverse and did not ripen into a prescriptive right.'" *Wilson*, 164 Mont. at 491, 525 P.2d at 27 (emphasis added) (quoting *Thompson on Real Property (Easements)* § 345); *accord Pub. Lands Access Assn. v. Boone & Crockett Club Found., Inc.*, 259 Mont. 279, 284, 856 P.2d 525, 528 (1993); *see also Larsen v. Richardson*, 2011 MT 195, ¶ 59, 361 Mont. 344, 260 P.3d 103 (noting that neighborly accommodation is a form of permissive use that may be "express or implied").

¶34  We have acknowledged Montana's custom and heritage which began in the homesteading days and allowed one neighbor to cross the land of another neighbor as a matter of general understanding between landowners. In *Rathbun v. Robson*, 203 Mont. 319, 322, 661 P.2d 850, 852 (1983), we observed:

> Several witnesses testified concerning local customs that began in the homesteading days concerning access across another's land. There existed an understanding among landowners that permission was not required every time a person needed to cross his neighbor's land. Permission was automatic if the individual closed the gates and respected his neighbor's property.

Evidence of this local custom, without more, is sufficient to establish that the use was permissive. *See Taylor v. Petranek*, 173 Mont. 433, 438, 568 P.2d 120, 123 (1977) ("[T]he homesteaders who initially lived in the area developed common practice of allowing others

---

103. In the present case, the primary issue is whether Lyndes showed that the Hertzlers' use was permissive. As discussed below, I conclude that he did.

15

to cross their lands to reach Suffolk. This evidence is sufficient to support a use permissive in its inception and not under a claim of right."), *overruled on other grounds*, *Warnack v. Coneen Fam. Trust*, 266 Mont. 203, 216, 879 P.2d 715, 723 (1994); *Ewan v. Stenberg*, 168 Mont. 63, 67, 541 P.2d 60, 63 (1975) ("[F]rom the beginning the Plaintiffs' usage of the trail and the later bulldozed road was a matter of neighborly cooperation between friendly ranchers. Consequently, it was a permissive use and has remained so until the Plaintiff's defiance of Stenberg's barricade in 1972, which is not a sufficient length of time to ripen into a prescriptive right." (internal quotation marks omitted)).

¶35    In *Amerimont, Inc. v. Gannett*, 278 Mont. 314, 324, 924 P.2d 1326, 1333 (1996), we explained that a prescriptive easement cannot be established where the use was "a mere privilege" pursuant to the permission and neighborly accommodation extended by the landowner. We held:

> Amerimont and its predecessors had the privileged use of the roadway pursuant to the permission and neighborly accommodation extended by Gannett and his predecessors. Residents of the area routinely helped each other with farm and ranch work and the parties and their predecessors understood that this custom and practice included the ability to cross one another's property without having to ask for permission each time, as long as the neighbors had business to attend to, did not abuse recreational privileges, and closed all gates after each passage. The roadway was used by the express or implied permission of the landowner and as a neighborly accommodation to surrounding landowners. Amerimont's and its predecessors' use of the road across the Gannett property was not adverse.

*Amerimont*, 278 Mont. at 324-25, 924 P.2d at 1333-34.

¶36    If a use begins as a permissive use, it is presumed to continue as such, and periodic express grants of permission are not required to maintain the permissive character of the use, especially where the use remains essentially the same. *Larsen*, ¶ 59 (citing *Rettig v.*

16

*Kallevig*, 282 Mont. 189, 196, 936 P.2d 807, 811 (1997), and *Rathbun*, 203 Mont. at 322-24, 661 P.2d at 852); *see also Heller*, ¶ 14 ("In determining whether the use of a road was adverse, we have stated that 'neighborly accommodation' is a form of permissive use which, 'by custom, does not require permission at every passing.'" (citing *Kessinger v. Matulevich*, 278 Mont. 450, 457, 925 P.2d 864, 868 (1996), and *Lemont Land Corp. v. Rogers*, 269 Mont. 180, 186, 887 P.2d 724, 728 (1994)). Accordingly, "'[i]f the user began by the permission of the owner, it will not ripen into an adverse or hostile right until notice of such adverse user is brought home to the owner and the user continued thereafter for the statutory period.'" *Wilson*, 164 Mont. at 491, 525 P.2d at 27 (quoting *Thompson on Real Property (Easements)* § 345); *see also Taylor*, 173 Mont. at 438, 568 P.2d at 123 ("Although a use permissive in its inception may ripen into a prescriptive right, it cannot do so unless there is a later distinct and positive assertion of a right hostile to the owner, which must be brought to the attention of the owner, and the use continued for the full prescriptive period."); *Medhus v. Dutter*, 184 Mont. 437, 443, 603 P.2d 669, 672 (1979) ("Since the use of the road was permissive at its inception, to find a prescriptive easement here we must find in the record a distinct and positive assertion of a right to use the disputed road hostile to the owners by those claiming the easement. The record must also show the right was brought to the attention of the owners and continued use of the easement for the full statutory period.").

¶37 The Court affirms the District Court's ruling that a private prescriptive easement had been established by the time Lyndes purchased the property in 1995. We state:

> The un-refuted testimony was that Hertzlers used the Section 27 road openly and notoriously for over forty years. While other landowners, including Lyndes's predecessors in ownership, acquiesced in Hertzler's [sic] right to use

17

the road, they never granted any permission nor did Hertzlers ever seek permission to cross Section 27 to access their property.

Opinion, ¶ 12. These determinations, however, are consistent with a longstanding custom of permissive use by neighborly accommodation and do not support a finding of adverse use. Neighborly accommodation *is* "open and notorious," and permission is *not* required at every passing but, rather, is presumed. Therefore, our conclusions of law, as well as those of the District Court, are incorrect.

¶38 Here, the record was not silent on whether the custom in the area was one of neighborly accommodation. To the contrary, it showed that use of the trail was by accommodation or permission. The record is replete with testimony from witnesses for both Lyndes and the Hertzlers that use by neighborly accommodation went as far back as the homesteading days. Nothing in the record could establish a determination other than that the use of the trail was through neighborly accommodation. In fact, Cynthia Green (one of the defendants claiming a prescriptive easement over Lyndes's property) testified to the following during cross-examination:

Q. In order to get to Sections 22 and 23 using your normal route, you do have to cross private property. Is that right?
A. Yes.
Q. It's about fourteen miles from your home place to Section 22. Is that about right?
A. I suppose that's an approximation.
Q. And one of the property owners whose land you would have to cross would be the Keller property.
A. That's correct.
Q. And the Kellers have never told you that you couldn't use their property, have they?
A. No, they have not.
Q. You just assume that it's okay.
A. They've never told us we couldn't.

Q. It's just them being neighborly.
A. I guess.

.   .   .

Q. Now, you don't contact the Kellers before you cross their property, do you?
A. No.
Q. Because they don't require you to do that.
A. That's right.
Q. And you'd agree that they know you cross their property.
A. Yes.
Q. But they don't prevent that, because they allow you to do it.
A. Yes, they do.
Q. And that's the way things have always been.
A. They allow me to cross.
Q. And that's the way things have always been.
A. In our recollection, yes.

¶39 The witnesses consistently testified that ranchers crossed each other's property for years and that people did not ask permission to use the trail. It was well known that permission was not required prior to using the trail. One witness, Gregory Keller, testified that use of the trails was the neighborly thing to do and that "we figure [the Hertzlers] need to get to their property. And in the older days, thirty, forty years ago, you just let people do that." Mr. Keller testified, however, that this was a "personal" right as opposed to a right that was legal or "judge decreed." Sonny Todd, who grew up on Work Creek, testified that asking for permission "just wasn't something that was done" and that "we went back and forth through each other's land" because it "was just the neighborly thing to do." Significantly, no witness testified to any custom or understanding except that usage of the trail was through neighborly accommodation.

19

¶40 In addition to local custom, there was other evidence to show that use of the trail began and remained permissive. There were several instances of control exercised by Lyndes. Although it is not clear from the District Court's findings whether the trail had a gate and lock prior to Lyndes's ownership, the District Court found that Lyndes began locking the gate by 1995. Only after Ray Hertzler telephoned Lyndes in 1999 asking for permission to use the trail did Lyndes grant permission to the Hertzlers by placing a key under a rock to gain access through the locked gate. We have held: "'The fact that the passage of a road has been for years barred by gates or other obstructions to be opened and closed by the parties passing over the land, has always been considered as strong evidence in support of a mere license to the public to pass over the designated way.'" *Pub. Lands Access Assn.*, 259 Mont. at 285, 856 P.2d at 528 (quoting *Maynard v. Bara*, 96 Mont. 302, 307, 30 P.2d 93, 95 (1934)).

¶41 The evidence in this case of neighborly accommodation and permissive use is compelling, but not surprising given Montana's heritage. In contrast, there is insufficient evidence to support adverse use during the period the Court finds a prescriptive easement was created—i.e., between 1973 and 1995, before Lyndes purchased the property. Merely asserting, decades later, that the use has been "under a claim of right," without any circumstances or act which would provide notice of the adversity, is insufficient to overcome the extensive evidence of neighborly accommodation. All elements to establish a prescriptive easement must be proved "because one who has legal title should not be forced to give up what is rightfully his without the opportunity to know that his title is in jeopardy and that he can fight for it." *Pub. Lands Access Assn.*, 259 Mont. at 283, 856 P.2d at 527

20

(internal quotation marks omitted). The burden at trial was on the Hertzlers to establish, by clear and convincing evidence, all elements of a prescriptive easement. *Kessinger*, 278 Mont. at 456, 925 P.2d at 868. Because evidence of permissive use defeats a claim of prescriptive easement absent some circumstances or act, besides use, indicating that the use was not merely permissive, *Heller*, ¶ 14, the Hertzlers' claim necessarily fails.

¶42 In my opinion, the Court has committed the same error as did the District Court. First, there is not clear and convincing evidence of adverse use. The Court relies merely on conclusory and self-serving assertions by the Hertzlers that passage was pursuant to a "claim of right." Second, the conclusions of law drawn by this Court and the District Court are incorrect and contrary to our precedent. The evidence in the record supports only one finding: that use of the trail was by neighborly accommodation and, accordingly, permission was not required at every passage. The fact that permission was not sought by the Hertzlers or other users is not a fact which supports adverse use when the record clearly establishes neighborly accommodation. The Court and the District Court misapprehended the effect of this evidence and have drawn conclusions inconsistent with our caselaw. The Court departs from established precedents finding, on similar facts, that "neighborly accommodation" does not establish adverse use.

¶43 As a final observation, I believe today's decision confuses our law of prescriptive easements and only encourages greater friction between neighboring landowners. While the Court states that landowners "should be commended for exhibiting cooperation rather than confrontation," Opinion, ¶ 22, the Court then turns around and punishes the alleged servient landowner here by finding a prescriptive easement over his property. The end result of

21

today's Opinion is that "cooperation" and neighborly accommodation by a landowner can later be used to dispossess that landowner of his property rights, where the beneficiary of the landowner's grace claims that the use has always been adverse and under a "claim of right."

¶44    I dissent.

/S/ LAURIE McKINNON