FILED

08/12/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0547

DA 24-0547

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 179

IN RE PARENTING OF:

D.C.S.,

     A minor.

REBECCAH JEAN TAYLOR,
n/k/a REBECCAH GROVE,

     Petitioner and Appellant,

  v.

JOSHUA RICHARD TAYLOR,

     Respondent and Appellee,

  and

DAVID SCOTT and JANICE SCOTT,

     Third-Party Intervenors and Appellees.

APPEAL FROM:   District Court of the Fifth Judicial District,
In and For the County of Beaverhead, Cause No. DR-1-2023-14004
Honorable Luke Berger, Presiding Judge

COUNSEL OF RECORD:

     For Appellant Rebeccah Grove:

          S. Chase Rosario, Malcom & Piers, PLLC, Lewistown, Montana

     For Appellee Joshua Richard Taylor:

          Joshua Richard Taylor, Self-Represented, Fairbanks, Alaska

For Appellees David Scott and Janice Scott:

Lori A. Harshbarger, Kylee Gibson, Harshbarger Law Firm, Twin Bridges, Montana

Submitted on Briefs: May 14, 2025

Decided: August 12, 2025

Filed:

_____
Clerk

2

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1 Rebeccah Grove ("Rebeccah") appeals the order entered by the Montana Fifth Judicial District Court, Beaverhead County, declining to address pending motions before it and determining that appeal to the Montana Supreme Court is the appropriate remedy. We address the following restated issues:

1. *Whether a final custody order by the District Court should be vacated for the District Court's failure to adhere to statutory requirements in granting a prior temporary custody order.*

2. *Whether this Court should exercise plain error review of the District Court's denial of Rebeccah's motion for amendment of judgment, relief from judgment, and new hearing.*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On February 22, 2019, Rebeccah and Joshua Taylor filed a joint petition for dissolution of marriage and shortly after filed an agreed parenting plan concerning their 7-year-old child, D.C.S. At the time of their dissolution, Rebeccah lived in Kalispell, Montana, while Joshua lived in Fairbanks, Alaska. On February 28, 2019, the court determined that the parties' agreed parenting plan was in D.C.S.'s best interest and adopted it as the final parenting plan. The parenting plan provided that D.C.S. would primarily reside with Rebeccah, with Joshua parenting D.C.S. only while visiting Montana. The parenting plan remained in place for nearly four years without any change.

¶3 In the summer of 2022, David and Janice Scott ("the Scotts"), Rebeccah's biological father and stepmother, began taking significant responsibility for parenting D.C.S., including enrolling him in school and providing a stable home in Wisdom,

3

Montana. After Rebeccah and her partner exhibited intoxication and troubling behavior during a visit in August 2022, D.C.S. began residing full-time with the Scotts. Under the Scotts' care, D.C.S. showed notable academic and social improvement. The Scotts alleged that Joshua had no meaningful contact with D.C.S. since 2016, and that Rebeccah could not provide safe living conditions. They detailed years of instability, substance abuse, neglect, inadequate supervision, and inappropriate conduct by Rebeccah and her partner, culminating in Rebeccah's removal of D.C.S. from school in January 2023 without notice, placing him in unstable living conditions in North Dakota.

¶4       On February 14, 2023, in the Eleventh Judicial District Court, Flathead County, the Scotts filed a petition for third-party parenting rights seeking to establish parental interest in D.C.S., pursuant to §§ 40-4-211 and 40-4-228, MCA; and an ex parte emergency motion for an interim third-party parenting plan, pursuant to § 40-4-213, MCA, supported by affidavit under § 40-4-220, MCA. In the affidavits, the Scotts averred that D.C.S.'s natural father had had no contact with D.C.S. since December 2016; D.C.S. had numerous unexcused absences from, and difficulty keeping up in, school while in Rebeccah's care; the Scotts facilitated D.C.S.'s schooling during COVID-19; when D.C.S. returned to Rebeccah's care, D.C.S. missed school consistently and exhibited behavioral issues; Rebeccah began partying again; D.C.S. called them in April 2022 claiming that Rebeccah was drinking all the time and leaving him alone with no food, D.C.S. was late for school because Rebeccah would not wake up in time, and Rebeccah would forget to pick D.C.S. up from school; during April 2022, D.C.S. stayed with the Scotts while Rebeccah addressed health issues and underwent surgeries; and Rebeccah provided D.C.S. no supervision in

4

her care. In support of their child-parent relationship with D.C.S., the Scotts claimed D.C.S. flourished in school and became involved in the community, missing only a half-day of school in their care to receive immunizations and medical care that Rebeccah had neglected to obtain for D.C.S. The Scotts asserted that it would be in D.C.S.'s best interest to remain in their care.

¶5 Although the District Court had not yet adjudicated whether the Scotts had a parental interest in D.C.S., it granted the Scotts' motion for ex parte emergency third-party parenting on the day it was filed, allowing D.C.S. "to reside in the Scotts' care, custody and control while this action is pending"; ordering that D.C.S. "shall remain in [the Scotts'] primary care as set forth in [the Scotts'] Proposed Interim Parenting Plan during the pendency of this litigation"; entitling the Scotts to pick D.C.S. up in Williston, North Dakota, on February 20, 2023, with civil standby; and setting a show cause hearing "regarding temporary third-party parenting issues" for February 28, 2023.

¶6 On February 23, 2023, to obtain new counsel, Rebeccah moved for a continuance of the February 28, 2023 hearing, which the District Court reset, four days later, to April 25, 2023. On February 28, 2023, Rebeccah filed an objection to the Scotts' petition, challenging their standing and the allegations of her unfitness. Rebeccah also filed a motion to amend or, alternatively, for relief from the February 14 order that granted the Scotts' motion for ex parte emergency third-party parenting, arguing that the order was based on manifest error because the Scotts had not yet established the threshold parental interest required under § 40-4-228(2), MCA.

¶7 On April 10, 2023, the District Court denied Rebeccah's motion to amend, finding that the Scotts' affidavits were sufficient to support issuance of a temporary emergency order under §§ 40-4-211 through 40-4-220, MCA, and that the Scotts, through their submitted affidavits, met their initial burden under § 40-4-220(2)(b), MCA.[1] The court instead relied on the upcoming evidentiary hearing to resolve outstanding questions concerning the Scotts' parental interest.

¶8 At the evidentiary hearing on April 25, 2023, the District Court heard testimony and received evidence from both parties. Rebeccah fully participated, challenging and cross-examining the Scotts' evidence and testimony. The Scotts provided evidence consistent with the averments in their affidavits of Rebeccah's conduct contrary to the parent-child relationship, their establishment of a child-parent relationship with D.C.S., and D.C.S.'s substantial improvement and stability under their care.

¶9 On July 6, 2023, the District Court entered its Findings of Fact, Conclusions of Law and Order granting the Scotts' petition for third-party parenting, amending the parenting plan to provide that D.C.S. "shall remain in the primary custody of the Scotts,"[2] with

---

[1] Specifically, the Court found that D.C.S. "spent most of the summer of 2022[] at the Scotts' residence in Wisdom, Montana[; i]n August 2022, after spending one week back in Kalispell, [D.C.S.] expressed concern to the Scotts that he was going to end up in foster care due to the behavior of [Rebeccah] and her partner[,] including being exposed to nudity, drunken behavior, excessive absences from school, dangerous behavior, and deprivation of food and proper supervision[; and Rebeccah and her partner] came to Wisdom [on August 17, 2022,] to visit and were asked to leave due to presumed drug use and bizarre behavior[, leaving D.C.S.] with the Scotts."

[2] The Montana Legislature replaced "custody" with "parenting" in 1998, but the District Court's Amended Final Parenting Plan, entered on July 6, 2023, provides, "Both parties have important roles to play in their child's development. They shall share legal custody of their child and share parenting time as follows: The child shall remain in the primary custody of the Scotts."

Rebeccah having parenting time in Wisdom upon one-week notice. In its conclusions of law, the District Court addressed § 40-4-227, MCA;[3] § 40-4-228(2)-(5), MCA;[4] and § 40-4-211(6), MCA.[5] The District Court concluded that the "Scotts have met their burden of demonstrating by clear and convincing evidence that they have established a

[3] "(1) It is the policy of the state of Montana:
(a) to recognize the constitutionally protected rights of parents and the integrity of the family unit;
(b) to recognize a child's constitutionally protected rights, including all fundamental rights unless those rights are specifically precluded by laws that enhance their protection; and
(c) to ensure that the best interests of the child are met in parenting proceedings.
(2) The legislature finds:
(a) that while it is in the best interests of a child to maintain a relationship with a natural parent, a natural parent's inchoate interest in the child requires constitutional protection only when the parent has demonstrated a timely commitment to the responsibilities of parenthood; and
(b) that a parent's constitutionally protected interest in the parental control of a child should yield to the best interests of the child when the parent's conduct is contrary to the child-parent relationship."

[4] "(2) A court may award a parental interest to a person other than a natural parent when it is shown by clear and convincing evidence that:
(a) the natural parent has engaged in conduct that is contrary to the child-parent relationship; and
(b) the nonparent has established with the child a child-parent relationship, as defined in 40-4-211, and it is in the best interests of the child to continue that relationship.
(3) For purposes of an award of visitation rights under this section, a court may order visitation based on the best interests of the child.
(4) For purposes of this section, voluntarily permitting a child to remain continuously in the care of others for a significant period of time so that the others stand in loco parentis to the child is conduct that is contrary to the parent-child relationship.
(5) It is not necessary for the court to find a natural parent unfit before awarding a parental interest to a third party under this section."

[5] "For purposes of [a parenting proceeding commenced by a person other than a parent], 'child-parent relationship' means a relationship that:
(a) exists or did exist, in whole or in part, preceding the filing of an action under this section, in which a person provides or provided for the physical needs of a child by supplying food, shelter, and clothing and provides or provided the child with necessary care, education, and discipline;
(b) continues or existed on a day-to-day basis through interaction, companionship, interplay, and mutuality that fulfill the child's psychological needs for a parent as well as the child's physical needs; and
(c) meets or met the child's need for continuity of care by providing permanency or stability in residence, schooling, and activities outside of the home."

child-parent relationship with this child";[6] "[s]ince the prior *Parenting Plan* was adopted on February 28, 2019, 'a change has occurred in the circumstances of the child and [an] amendment is necessary to serve the best interest of the child'"; and because "an amendment of the prior *Parenting Plan* is necessary to serve the best interests of the child, . . . the Court must consider . . . the factors" in §§ 40-4-212(1) and 40-4-219(1)(a), MCA. The District Court further concluded that, because "Rebeccah now lives in North Dakota and changing the child's residence to North Dakota would significantly impact the Scotts' contact with the child, the Court must and has considered" the factors in § 40-4-219(1)(b), MCA.[7] Ultimately, the District Court concluded:

> The *Amended Final Parenting Plan* ordered by the Court protects the best interests of the child, maintains the child's emotional stability and minimizes

---

[6] This conclusion of law established that the Scotts had met their burden under § 40-4-228(2)(b), MCA. However, "[a] court may award a parental interest to a person other than a natural parent when it is shown by clear and convincing evidence" not only what the District Court found here in satisfaction of § 40-4-228(2)(b), MCA, but also that "the natural parent has engaged in conduct that is contrary to the child-parent relationship," as required by § 40-4-228(2)(a), MCA, a conclusion of law the District Court did not make here although its findings of fact would have supported such a conclusion of law. The appellant does not raise this issue on appeal, so we will not address it but alert trial courts that they may award a parental interest to a person other than a natural parent only when it is shown, by clear and convincing evidence, the situations described in both § 40-4-228(2)(a) and (b), MCA, exist. *See also Edelen v. Bonamarte*, 2007 MT 138, ¶ 10, 337 Mont. 407, 162 P.3d 847 (a court's "failure to state the findings of fact and conclusions of law in the recommended form does not constitute substantial error if the court's findings and conclusions are clear to this Court" and the court's "order sets forth reasoning, based upon its findings of fact and conclusions of law, in a manner sufficient to allow informed appellate review").

[7] "(i) the feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties;
(ii) the reasons of each parent for seeking or opposing the change of residence;
(iii) whether the parent seeking to change the child's residence has demonstrated a willingness to promote the relationship between the child and the nonrelocating parent; and
(iv) whether reasonable alternatives to the proposed change of residence are available to the parent seeking to relocate."

the child's exposure to conflict, provides for the child's changing needs, sets forth the authority and responsibilities of each party, and encourages the parties to cooperate rather than seek[] judicial intervention. [Section 40-4-233, MCA.]

¶10 Rebeccah timely appealed after the Fifth Judicial District Court, Beaverhead County, to which venue had changed in the interim, declined to rule on her post-judgment motions, determining the appropriate remedy was appeal.

## STANDARD OF REVIEW

¶11 We review conclusions of law, including issues of standing and constitutional claims, de novo. *In re Parenting of J.N.P.*, 2001 MT 120, ¶ 3, 305 Mont. 351, 27 P.3d 953; *In re D.C.N.H.*, 2020 MT 119, ¶ 7, 400 Mont. 59, 463 P.3d 445.

¶12 Denials of motions to amend judgment are reviewed for an abuse of discretion. *In re Estate of Johnson*, 2024 MT 224, ¶ 13, 418 Mont. 198, 557 P.3d 36. "A district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *In re Marriage of Crilly*, 2005 MT 311, ¶ 10, 329 Mont. 479, 124 P.3d 1151.

## DISCUSSION

¶13 *1. Whether a final custody order by the District Court should be vacated for the District Court's failure to adhere to statutory requirements in granting a prior temporary custody order.*

¶14 Rebeccah argues that the District Court abused its discretion in issuing the ex parte emergency third-party parenting plan because, contrary to the requirement of § 40-4-228(2), MCA, as clarified in *Sayler v. Yan Sun*, 2023 MT 175, 413 Mont. 303, 536 P.3d 399, the Scotts had not yet judicially established a parental interest before seeking

9

their ex parte emergency third-party parenting plan. Long before *Sayler*, consistent with § 40-4-228(2), MCA, we recognized that "a nonparent must first establish a parental interest in a minor child prior to seeking custody of that child." *In re L.F.A.*, 2009 MT 363, ¶ 12, 353 Mont. 220, 220 P.3d 391; *Kulstad v. Maniaci*, 2009 MT 326, ¶ 63, 352 Mont. 513, 220 P.3d 595. Section 40-4-211(4)(b), MCA, "allows a nonparent standing to seek parental interest of a minor child if that person has established a child-parent relationship." *See Kulstad*, ¶ 57; § 40-4-211(4)(b), MCA. In seeking a parental interest, § 40-4-228(2), MCA, provides three requisite elements, *to be shown by clear and convincing evidence*, that: (1) the natural parent has engaged in conduct contrary to the child-parent relationship; (2) the nonparent has established a child-parent relationship with the child as defined in § 40-4-211, MCA; and (3) continuing that relationship is in the best interest of the child. (Emphasis added.)

¶15 This case is materially distinguishable from *Sayler*, where the District Court issued a final parenting plan without any predicate adjudication of parental interest. Here, although the emergency order was prematurely granted, the District Court did not finalize any parenting plan until it conducted a full evidentiary hearing and entered specific findings satisfying § 40-4-228(2), MCA. This post hoc compliance cures the initial defect without violating the constitutional safeguards recognized in *Sayler*.

¶16 Rebeccah further asserts constitutional violations of substantive due process and equal protection under Article II, Sections 4 and 15, of the Montana Constitution, and the Fourteenth Amendment of the U.S. Constitution, arguing the ex parte emergency third-party parenting order impermissibly infringed upon her fundamental right to parent

10

without adequate safeguards. While recognizing the seriousness of the alleged violations of these constitutional protections, the evidentiary hearing provided Rebeccah comprehensive procedural safeguards, ensuring that she had notice, opportunity to be heard, and the ability to fully challenge the Scotts' evidence.

¶17 Moreover, while ex parte procedures implicate substantial constitutional interests, courts retain authority to issue temporary emergency orders to protect children when credible allegations of harm are supported by a prima facie showing of a child-parent relationship. District courts have jurisdiction to make parenting determinations when the child is physically present in the state and "it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is neglected or dependent." Section 40-4-211(1)(c)(iii), MCA. In this case, the Scotts' affidavits alleged serious safety concerns and described a longstanding relationship with D.C.S. sufficient to justify temporary relief. Any procedural concerns arising from the lack of a contemporaneous adjudication under § 40-4-228(2), MCA, were resolved by the prompt evidentiary hearing, where Rebeccah had full opportunity to respond and the court made specific findings satisfying the statutory requirements.

¶18 Additionally, the District Court's ultimate compliance with § 40-4-228(2), MCA, renders Rebeccah's arguments moot. A legal question becomes moot when it ceases to present a justiciable controversy because "any action the Court takes will have no effect on the parties' situation." *In re M.R.O.*, 2008 MT 280, ¶ 19, 345 Mont. 309, 190 P.3d 1109. Issues become moot when, due to a change in circumstances or some intervening event, the court is unable to grant effective relief. *In re Big Foot Dumpsters & Containers, LLC*,

11

2022 MT 67, ¶ 10, 408 Mont. 187, 507 P.3d 169. Here, the issues surrounding the ex parte emergency interim third-party parenting plan order became moot when the District Court, based upon evidence presented at the April 25, 2023 hearing, entered its July 6, 2023 order permanently amending D.C.S.'s parenting plan. We decline to reverse the District Court's final custody order because of the deficiently entered temporary order, given the District Court's adherence to statutory principles in granting the temporary order.

¶19     2. *Whether this Court should exercise plain error review of the District Court's denial of Rebeccah's motion for amendment of judgment, relief from judgment, and new hearing.*

¶20     Beyond her challenge of the amended parenting plan adopted in the Scotts' favor, Rebeccah contends that the District Court incorrectly entered numerous factual findings and urges this Court to require a new hearing on the matter. However, Rebeccah did not appeal the Findings of Fact, Conclusions of Law and Order the District Court entered; rather, she filed a motion for amendment of judgment, relief from judgment, and new hearing with the District Court, which the District Court denied. She is now seeking plain error review of the District Court's denial of her motion.

¶21     "The instances in which we have exercised our common law power of plain error review are rare." *State v. Favel*, 2015 MT 336, ¶ 27, 381 Mont. 472, 362 P.3d 1126. The party invoking plain error review must firmly convince this Court that the claimed error implicates a fundamental right and that review is necessary to prevent a manifest miscarriage of justice, or that failure to review may leave unsettled the question of fundamental fairness of the proceeding or may compromise the integrity of the judicial process. *State v. George*, 2020 MT 56, ¶ 5, 399 Mont. 173, 459 P.3d 854. When

12

determining whether to exercise plain error review, we consider the "totality of circumstances of each case." *George*, ¶ 5.

¶22 Here, Rebeccah claims the error implicates her fundamental right to parent her child. "It is beyond dispute that the right to parent one's children is a constitutionally protected fundamental liberty interest protected by Article II, section 17 of the Montana Constitution and by the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *In re A.J.C.*, 2018 MT 234, ¶ 31, 393 Mont. 9, 427 P.3d 59. As such, Rebeccah has met the first requirement for plain error review in identifying that the claimed error implicates a fundamental right.

¶23 Next, Rebeccah must establish that review is necessary to prevent a manifest miscarriage of justice or that failure to review will leave unsettled questions of fundamental fairness or compromise the judicial process. She has not met this burden. Rebeccah's arguments rely largely on conflicting testimony evaluated by the District Court, which is uniquely positioned to assess witness credibility and resolve factual disputes. As we have held in the past, "the District Court is in the best position to observe and determine the credibility of witnesses, and we will not second guess its determination regarding the strength and weight of conflicting testimony." *Lyndes v. Green*, 2014 MT 110, ¶ 15, 374 Mont. 510, 325 P.3d 1225. Rebeccah received a full and fair opportunity to present and challenge evidence, and we see no miscarriage of justice or fundamental unfairness. Therefore, plain error review is not warranted, and we decline to exercise it.

**CONCLUSION**

¶24    The District Court acted within its authority to protect the child pending a prompt evidentiary hearing when it granted the ex parte emergency third-party parenting order before formally adjudicating parental interest under § 40-4-228(2), MCA, based on the Scotts' affidavits supporting a prima facie showing of a child-parent relationship and alleging conduct by Rebeccah contrary to that relationship.  The procedural concerns raised were resolved by the subsequent hearing, at which Rebeccah was afforded full notice and opportunity to respond, and at which the court made specific findings satisfying the requirements of § 40-4-228(2), MCA.

¶25    Constitutional concerns Rebeccah raises were similarly resolved by the comprehensive procedural protections provided. Thus, procedural errors related to the ex parte emergency order are moot, and plain error review is unnecessary.  The District Court's final amended parenting plan complies with statutory and constitutional requirements and is supported by substantial credible evidence.

¶26    Affirmed.

/S/ KATHERINE M BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON