FILED

06/20/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0279

DA 22-0279

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 117

CREMER RODEO LAND AND
LIVESTOCK COMPANY,

      Plaintiff and Appellee,

  v.

LINDA McMULLEN,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Sweet Grass, Cause No. DV-2016-23
Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          J. Devlan Geddes, Kyle W. Nelson, Henry J.K. Tesar, Goetz, Geddes, &
Gardner, P.C., Bozeman, Montana

      For Appellee:

          Karl Knuchel, Webster Crist, Karl Knuchel, P.C., Livingston, Montana

Submitted on Briefs:  January 4, 2023

Decided:  June 20, 2023

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Plaintiff and Appellant Linda McMullen (McMullen) appeals from the August 31, 2018 Decision and Order Denying Defendant's Motion for Summary Judgment, the June 29, 2020 Decision and Order [] Granting Plaintiff's Motion to Amend Complaint, the April 4, 2022 Findings of Fact, Conclusions of Law and Order, and the April 27, 2022 Judgment issued by the Sixth Judicial District Court, Sweet Grass County. The District Court's orders, as relevant here, denied McMullen's motion for summary judgment, permitted Cremer Rodeo Land and Livestock Company (Cremer Rodeo) to amend its complaint, and determined Cremer Rodeo obtained a prescriptive easement over two roads across McMullen's property following a three-day bench trial.

¶2 We address the following restated issues on appeal:

*1. Whether the District Court erred by denying McMullen's motion for summary judgment.*

*2. Whether the District Court abused its discretion by granting Cremer Rodeo leave to amend its complaint.*

*3. Whether the District Court erred when it determined Cremer Rodeo's amended complaint related back to its original complaint.*

*4. Whether substantial credible evidence supports the District Court's finding that Cremer Rodeo obtained a prescriptive easement over the Lien and Medley Roads.*

¶3 We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶4 This case involves a determination of whether Cremer Rodeo is entitled to a prescriptive easement over two roads which cross McMullen's property and enter Cremer

2

Rodeo's property—known as the Lien Road and the Medley Road. Cremer Rodeo has been using the two roads since at least 1940. The Lien Road was formerly County Road 6A, until it was abandoned by the Sweet Grass County Board of Commissioners in 1991. The Medley Road is a two-track spur road which branches off the Lien Road and provides access to Cremer Rodeo's Medley Pasture.

¶5 McMullen began leasing property from the Lien family in 1990. She eventually purchased the property at issue from Lien in 2000, before trading it to her ex-husband, and ultimately re-purchasing it in 2003. McMullen removed a cattleguard and installed a gate on the Lien Road in 2005, giving the combination to Cremer Rodeo. The parties used the road without incident for several years after McMullen installed the gate, until the lock was either shot off or broken off three times in 2013. McMullen then replaced the gate with a fence, which Cremer Rodeo tore down and replaced with a makeshift gate in 2014. McMullen replaced the gate with a fence, which Cremer Rodeo again tore down in 2015. McMullen then dug trenches across the Lien and Medley Roads. In 2016, Cremer Rodeo filed the present lawsuit, seeking a prescriptive easement over the Lien Road.[1]

¶6 On February 9, 2018, McMullen moved for summary judgment, asserting Cremer Rodeo's prescriptive easement claim failed because its use of the Lien Road between 1991 and 2014 was permissive. Cremer Rodeo filed a response brief on March 1, 2018, asserting

---

[1] Cremer Rodeo's complaint also brought a quiet title claim regarding the Lien Road. The parties later stipulated to the dismissal of this claim and the District Court issued an order dismissing it with prejudice on December 1, 2017.

3

it had never asked for permission to use the road and had perfected its prescriptive easement by 1996, several years before McMullen owned the property. On March 6, 2018, the District Court, pursuant to Cremer Rodeo's motion, issued an order allowing Cremer Rodeo to file the depositions of McMullen, Ronda Cremer Johnston (Ronda), George Cremer (George), Rod Johnston, Jake Johnston (Jake), and Matt Cremer (Matt). The depositions were filed in the court record that same day. McMullen filed a reply brief on March 8, 2018. Neither party requested a hearing on the motion, and the District Court issued its Decision and Order Denying Defendant's Motion for Summary Judgment on August 31, 2018. The court denied McMullen's motion, finding it was "clear that the parties dispute essential facts that would serve to form the basis of a conclusion regarding permission." Citing to the deposition testimony, the court noted there was a genuine dispute between the parties regarding whether Cremer Rodeo had ever asked for permission and whether it had established a prescriptive right over Lien Road long before McMullen purchased the property.

¶7     The matter was set for a bench trial beginning on May 19, 2020. The first day of the trial had to be vacated due to technical difficulties. On the second day of trial, McMullen informed the District Court she would object to any discussion regarding the Medley Road because Cremer Rodeo's complaint did not set out a claim for a prescriptive easement over the Medley Road. Cremer Rodeo informed the court that it "believe[d] that the complaint covered both" the Lien and Medley Roads and that it was no surprise to McMullen because "everybody testified to it in their depositions, as well as the contempt

4

hearing."[2] The District Court informed Cremer Rodeo it could go to trial at that time, without referencing the Medley Road, or the court would vacate the trial to allow Cremer Rodeo to amend its pleadings to include the Medley Road and McMullen to conduct further discovery on the matter. Ultimately, the court vacated the trial to allow Cremer Rodeo the opportunity to move to amend its pleadings to make a prescriptive easement claim over the Medley Road.

¶8 Cremer Rodeo filed a Motion to File Amended Complaint on June 2, 2020. On June 12, 2020, McMullen filed a response to the motion, asserting the motion should be denied as it was "unsupported, . . . untimely, and . . . prejudicial." Cremer Rodeo filed a reply brief on June 25, 2020, asserting the amendment should be granted, contending its pleading met the requirements to put McMullen on notice of its Medley Road claim, noting there was much discussion regarding the road during both depositions and the contempt proceeding, and arguing that its amended complaint should relate back to the original 2016 filing date. The District Court issued its Decision and Order [] Granting Plaintiff's Motion to Amend Complaint on June 29, 2020. The court found there was no undue prejudice to McMullen by allowing Cremer Rodeo to amend its complaint to assert the Medley Road claim, because it had already been the subject of both discovery and testimony at the contempt hearing. The court additionally found that the "date of filing of the Amended

---

[2] McMullen had sought to hold Cremer Rodeo in contempt for accessing the Medley Pasture via the Lien and Medley Roads, in violation of a stipulated preliminary injunction. The District Court, noting a communication problem between the parties, declined to hold Cremer Rodeo in contempt for violating the preliminary injunction to feed its cattle during an extreme winter storm which made access to the Medley Pasture impossible through alternate routes.

Complaint should relate back to the date the original Complaint was filed, because the dispute regarding the use of the Lien Road and the Medley spur that connects with it are interrelated and arise out of the same conduct, transactions and occurrences."

¶9 In May 2021, the District Court held a three-day bench trial. The court heard testimony from Ronda, George, Matt, Jake, Leo Cremer, Larry Lahren, Linda McMullen, Bob Green, Marlin Rhoades, Pat Connolly, Jason Smith, Nate Arno, Jim Price, and Elaine Allestad over the course of the trial. Generally, the Cremer Rodeo witnesses testified to their belief that they had a right to use the Lien and Medley Roads, while the McMullen witnesses testified that Cremer Rodeo was allowed to use the roads due to neighborly accommodation and permission from Lien, and later McMullen, which McMullen revoked after the lock was repeatedly broken off in 2013. On April 4, 2022, the District Court entered its Findings of Fact, Conclusions of Law and Order, which determined McMullen and her witnesses were less credible than Cremer Rodeo at trial and found McMullen "provided insufficient evidence" to support her claim that Cremer Rodeo's use of the Lien and Medley Roads was out of permissive courtesy and neighborly accommodation. The court held that Cremer Rodeo had a prescriptive easement over the Lien and Medley Roads and ordered McMullen to remove her fencing and other obstructions blocking the roads.

¶10 McMullen appeals. Additional facts will be discussed as necessary below.

## STANDARD OF REVIEW

¶11 We review a district court's grant or denial of summary judgment de novo, applying the same criteria as M. R. Civ. P. 56. *Knucklehead Land Co. v. Accutitle, Inc.*, 2007 MT

6

301, ¶ 10, 340 Mont. 62, 172 P.3d 116. Summary judgment is only appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Kucera v. City of Billings*, 2020 MT 34, ¶ 6, 399 Mont. 10, 457 P.3d 952 (citing *Davis v. Westphal*, 2017 MT 276, ¶ 9, 389 Mont. 251, 405 P.3d 73).

¶12 We review a district court's decision on an M. R. Civ. P. 15(a) motion to amend a pleading for an abuse of discretion. *Ally Fin., Inc. v. Stevenson*, 2018 MT 278, ¶ 10, 393 Mont. 332, 430 P.3d 522 (citing *Farmers Coop. Ass'n v. Amsden, LLC*, 2007 MT 286, ¶ 12, 339 Mont. 445, 171 P.3d 690).

¶13 A district court's application of M. R. Civ. P. 15(c) is a question of law which we review de novo. *H & H Dev., LLC v. Ramlow*, 2012 MT 51, ¶ 13, 364 Mont. 283, 272 P.3d 657 (citing *Citizens Awareness Network v. Mont. Bd. of Envtl. Review*, 2010 MT 10, ¶ 13, 355 Mont. 60, 227 P.3d 583).

¶14 "We review the findings of fact in a civil bench trial to determine whether they are supported by substantial credible evidence. We review such evidence in a light most favorable to the prevailing party, and leave the credibility of witnesses and weight assigned to their testimony to the determination of the district court." *Only A Mile, LLP v. State*, 2010 MT 99, ¶ 10, 356 Mont. 213, 233 P.3d 320 (citations omitted). We will affirm the factual findings of a district court sitting without a jury unless those findings are clearly erroneous. *Pedersen v. Ziehl*, 2013 MT 306, ¶ 10, 372 Mont. 223, 311 P.3d 765. We review a district court's conclusions of law for correctness. *Pedersen*, ¶ 10.

7

## DISCUSSION

¶15   *1. Whether the District Court erred by denying McMullen's motion for summary judgment.*

¶16   McMullen asks this Court to reverse the District Court's 2018 denial of her first motion for summary judgment, asserting deposition testimony from Cremer Rodeo's representatives undisputedly shows Cremer Rodeo's usage of the Lien Road began and continued pursuant to neighborly accommodation. Cremer Rodeo contends the District Court correctly denied McMullen's motion for summary judgment because the deposition testimony, taken as a whole, made it clear that Cremer Rodeo asserted its use of the Lien Road was done pursuant to a claim of right, not due to permission from McMullen's predecessors, and, at a minimum, demonstrated a genuine issue of material fact on the issue. We agree with the District Court that the deposition testimony at issue evidenced a genuine dispute to an issue of material fact, such that summary judgment was not appropriate.

¶17   "In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences that might be drawn from the offered evidence should be drawn in favor of the party opposing summary judgment." *Hughes v. Lynch*, 2007 MT 177, ¶ 7, 338 Mont. 214, 164 P.3d 913. In addition, we have long held that "[s]ummary judgment is an extreme remedy that should never be a substitute for a trial on the merits if a controversy exists over a material fact." *Hughes*, ¶ 7 (citing *Mont. Metal Buildings, Inc. v. Shapiro*, 283 Mont. 471, 474, 942 P.2d 694, 696 (1997)). To establish an easement by prescription, the party claiming an easement must

8

show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full five-year statutory period. *Barrett, Inc. v. City of Red Lodge*, 2020 MT 26, ¶ 9, 398 Mont. 436, 457 P.3d 233. "Montana has consistently followed the minority rule, which holds that open, notorious, continuous, uninterrupted and exclusive use raises a presumption that the use was also adverse." *Albert v. Hastetter*, 2002 MT 123, ¶ 20, 310 Mont. 82, 48 P.3d 749 (collecting cases). "If the claimant establishes the elements of prescriptive use, there is a presumption that the use is adverse to the servient estate and the burden shifts to the owner of the servient estate to show that the use was permissive." *Lyndes v. Green*, 2014 MT 110, ¶ 17, 374 Mont. 510, 325 P.3d 1225 (citing *Brimstone Mining, Inc. v. Glaus*, 2003 MT 236, ¶ 21, 317 Mont. 236, 77 P.3d 175). A claim for a prescriptive easement can be defeated "by proof that the use was permissive." *Lyndes*, ¶ 17 (citing *Brown & Brown of MT, Inc. v. Raty*, 2012 MT 264, ¶ 19, 367 Mont. 67, 289 P.3d 156).

¶18 McMullen's summary judgment motion asserted Cremer Rodeo's prescriptive easement claim failed as a matter of law because its use of the Lien Road began and continued pursuant to permission following the county's abandonment of the road. As such, McMullen appeared to concede that the elements of prescriptive use had been met and it was therefore her burden to demonstrate permissive use. Here, the District Court denied McMullen's motion, reasoning that "[p]rescriptive easement cases are generally replete with disputed facts, and this case is no exception." Upon our de novo review of the Rule 56 record as it existed at the time of McMullen's 2018 summary judgment motion,

9

we agree with the District Court that genuine issues of material fact existed regarding whether Cremer Rodeo's use of the Lien Road was based on permission or a claim of right.

¶19    McMullen asserts the deposition testimony of the Cremer Rodeo witnesses and the affidavits of two former Sweet Grass County Commissioners provided undisputed evidence Cremer Rodeo's use of the Lien Road was based on the permission of McMullen's predecessors.   Based on her interpretation of this evidence, McMullen contends the District Court erred by allowing the matter to go to trial at all, because Cremer Rodeo witnesses made statements tending to show neighborly accommodation and permissive use.

¶20    It is true that the Cremer Rodeo witnesses did make statements which could show its use was pursuant to permission during their depositions.  They also repeatedly made statements contending their use of the Lien Road was done under a claim of right and that they had never asked for permission from anyone—either the Lien family or, later, McMullen—to use the road.  "Adverse use is exercised under a claim of right--not as license revocable at the pleasure of the servient estate." *Brimstone Mining*, ¶ 23 (citing *Pub. Lands Access Ass'n v. Boone & Crockett Club Found.*, 259 Mont. 279, 283, 856 P.2d 525, 527 (1993)).  There were also moments of confusion when the parties were asked to describe how their use was "adverse," a legal term of art in the context of a prescriptive easement.  Viewing this evidence in the light most favorable to Cremer Rodeo, as the non-moving party, leads to only one conclusion—the parties had a genuine dispute regarding whether Cremer Rodeo's use of Lien Road was pursuant to permission.

10

¶21 Ultimately, the District Court reviewed the entire record and correctly determined that a few cherry-picked quotes from depositions did not tell the whole story.[3] The parties had entirely opposing positions regarding permissive use, which was a genuine issue of material fact in this prescriptive easement case. "Summary judgment is an extreme remedy that should never be a substitute for a trial on the merits if a controversy exists over a material fact." *Hughes*, ¶ 7. On the record before it, the District Court correctly found McMullen failed to meet her burden to demonstrate the absence of a dispute regarding an issue of material fact and properly denied her motion for the "extreme remedy" of summary judgment under the facts of this case.

¶22 *2. Whether the District Court abused its discretion by granting Cremer Rodeo leave to amend its complaint.*

¶23 McMullen asserts the District Court abused its discretion when it allowed Cremer Rodeo leave to amend its complaint to assert the Medley Road claim, contending the amendment was both untimely and prejudicial to her. Cremer Rodeo asserts its original complaint attempted to set out a single prescriptive easement claim encompassing the road portions of McMullen's property that provided access to Cremer Rodeo's surrounding properties and it believed McMullen was well aware of its Medley Road claim because it had been discussed at length during discovery. Cremer Rodeo complains it was placed in

---

[3] While it did not file a cross-motion for summary judgment, in its response brief to McMullen's motion Cremer Rodeo requested summary judgment in its favor because its witnesses made statements during their depositions regarding Cremer Rodeo's "right" to use the Lien Road. The District Court properly rejected this request as it was both procedurally improper and clear from the record the parties had a genuine dispute regarding the permissive use issue in this case.

11

a "procedural mousetrap" and caught off guard when McMullen informed the District Court it would object to any evidence regarding Medley Road on the morning of the second day of trial, after the first day of trial was vacated with no discussion due to technical difficulties. Cremer Rodeo asserts the court allowing the amendment was both proper under the circumstances and did not prejudice McMullen, who was long aware of the lingering Medley Road issue through both discovery and the contempt proceedings.

¶24 M. R. Civ. P. 15(a)(2) provides that a district court should "freely give leave" to amend pleadings "when justice so requires." "We interpret the rule liberally so that allowance of amendments is the general rule and denial is the exception." *Diana's Great Idea, LLC v. Jarrett*, 2020 MT 199, ¶ 16, 401 Mont. 1, 471 P.3d 38 (citing *Ally Fin.*, ¶ 13). While allowing amendment is the general rule, a district court is not required to automatically grant a motion to amend. *Diana's Great Idea*, ¶ 16 (citations omitted). "A district court may properly deny a motion to amend for 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by allowance of the amendment, futility of the amendment, etc.'" *Ally Fin.*, ¶ 13 (quoting *Farmers Coop. Ass'n*, ¶ 12).

¶25 The District Court, when informed of McMullen's objections to any testimony regarding the Medley Road on the first true day of trial, engaged in a lengthy discussion on the issue with counsel for both parties before ultimately offering Cremer Rodeo the choice to either proceed to trial and not address the Medley Road issue or vacate the trial and move to amend its complaint. Cremer Rodeo, who had previously informed the court

12

that it was planning to move to amend its pleadings to conform to the evidence presented at trial, chose the option to vacate trial and move to amend its complaint. The District Court, in its order allowing Cremer Rodeo to amend its complaint, correctly noted the "Medley spur had been discussed during discovery [and] was the subject of quite extensive testimony during" the contempt hearing in 2019. The court found McMullen would not face undue prejudice due to the amendment, again noting the Medley Road had already been the subject of both discovery and "significant testimony at the contempt hearing." Recognizing the rules of civil procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding[,]" M. R. Civ. P. 1, the District Court found the "Medley spur is clearly an issue that exists between the parties that, if not addressed in this litigation, would likely be the subject of other and further litigation[,]" and that denying amendment would likely lead to more litigation between these parties in the future. The court also allowed McMullen the opportunity to conduct further discovery on the Medley Road issue, if needed.

¶26 Our review of the record reveals no abuse of discretion in the District Court's decision to allow Cremer Rodeo to amend its complaint to assert the Medley Road claim in this case. The Medley Road issue was certainly no surprise in this case as it had already been the subject of extensive discovery and testimony. The court correctly found there was no undue prejudice to McMullen by allowing Cremer Rodeo's prescriptive easement claims over both the Lien Road and its Medley Road spur which cross her land to go forward at the same time, in the same case, rather than requiring a separate proceeding to

13

be commenced due to the mistaken belief of Cremer Rodeo's counsel that it could amend its pleadings to conform to the evidence presented at trial.

¶27 *3. Whether the District Court erred when it determined Cremer Rodeo's amended complaint related back to its original complaint.*

¶28 Having determined the District Court did not abuse its discretion by permitting Cremer Rodeo to amend its complaint and assert a prescriptive easement over the Medley Road, we turn now to whether the District Court erred by determining the amendment related back to the filing date of the original complaint. McMullen asserts the District Court's decision was erroneous because the court determined the new cause of action was "interrelated" to the original, which is a lower standard than the law requires. Cremer Rodeo contends it attempted to set out a single prescriptive easement claim encompassing the road portions of McMullen's property that provided access to Cremer Rodeo's surrounding properties and therefore it did not make a distinction between the Lien and Medley Roads at the time it filed the original complaint in this matter.

¶29 "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" M. R. Civ. P. 15(c)(1)(B). "The expiration of the applicable statute of limitations does not bar an amended pleading when the amendment fits the requirements of M. R. Civ. P. 15(c)." *H & H Dev.*, ¶ 17 (citing *Citizens Awareness Network*, ¶ 21). The application of the relation back doctrine to an amended pleading "allows a court to render a dispositive decision on the merits of a party's argument, rather than on technicalities." *H & H Dev.*,

¶ 17 (citing *Citizens Awareness Network*, ¶ 21). "Ultimately, the policy of [M. R. Civ. P. 15(c)] is generous toward allowing amendments." *Citizens Awareness Network*, ¶ 22 (citation omitted).

¶30 The District Court found the "date of filing of the Amended Complaint should relate back to the date the original Complaint was filed, because the dispute regarding the use of the Lien Road and the Medley spur that connects with it are interrelated and arise out of the same conduct, transactions and occurrences." McMullen takes issue with the District Court's use of the term "interrelated" in its decision, but it is abundantly clear from the continuation of the sentence that the court based its decision on the proper Rule 15(c)(1)(B) standard applicable when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]"

¶31 McMullen further asserts the District Court's relation back decision was incorrect because the Medley Road claim of Cremer Rodeo's amended complaint did not share the same operative facts with the Lien Road claim from the original complaint. "In determining whether the claim in the amended pleading arises from the same conduct, transaction, or occurrence as the original pleading, we focus on 'whether the amended and original pleading are based on the same set of operative facts.'" *Citizens Awareness Network*, ¶ 22 (quoting *Smith v. Butte-Silver Bow Cty.*, 266 Mont. 1, 10, 878 P.2d 870, 875 (1994)). We are not persuaded by McMullen's argument in this regard. Cremer Rodeo maintains that it "intended and attempted to have" the prescriptive easement claim in its

original complaint "encompass its assertion to a prescriptive easement-based right to use the road portions on [McMullen's] property that offered access to its surrounding properties." There was often confusion as to the status of the Lien and Medley Roads throughout discovery. As one example, George Cremer testified at his deposition, referring to the Lien Road, that he had "never heard it called that," because "[w]e just called it the Medley Road." This confusion continued through to the aborted first trial, when it was made clear that the issue needed to be resolved via amending the pleadings to bring separate claims for the Lien and Medley Roads, rather than Cremer Rodeo's attempted claim to "road portions" which offered access to its properties.

¶32 Though McMullen focuses on the differences between the Lien and Medley Roads, such as the direction they run and the fact the Medley Road was never a county road, we do not agree that this precludes a determination Cremer Rodeo's claims were based on the same operative facts. Cremer Rodeo was attempting to assert a prescriptive easement over the road portions it used to access its properties, a fact which McMullen clearly recognized based on the depositions in this case. The operative facts of this case, then, are the use of the roads, not their directions. Once it determined Cremer Rodeo should be allowed to amend its complaint in this case, the District Court correctly concluded the amended complaint should relate back. We agree with its decision because having the amended complaint relate back allowed the District Court to "render a dispositive decision on the merits of [Cremer Rodeo's] argument, rather than on technicalities." *H & H Dev.*, ¶ 17. The District Court's decision was also in tune with our recognition that Rule 15(c) "is

16

generous toward allowing amendments," *Citizens Awareness Network*, ¶ 22, and we do not disturb its conclusion that Cremer Rodeo's amended complaint related back to the date of the filing of its original complaint.

¶33 *4. Whether substantial credible evidence supports the District Court's finding that Cremer Rodeo obtained a prescriptive easement over the Lien and Medley Roads.*

¶34 Finally, McMullen asserts the District Court's post-trial determination that Cremer Rodeo obtained a prescriptive easement over the Lien and Medley Roads was clearly erroneous and that Cremer Rodeo failed to present sufficient evidence in support of its prescriptive easement claims. As she did below, McMullen focuses primarily on whether Cremer Rodeo's use of the roads was based on permission and/or neighborly accommodation. Cremer Rodeo, meanwhile, asserts the District Court correctly found the burden of showing permissive use was on McMullen and that she failed to meet that burden.

¶35 We will affirm the factual findings of a district court sitting without a jury unless those findings are clearly erroneous. *Pedersen*, ¶ 10. We review the findings of fact in a civil bench trial to determine whether they are supported by substantial credible evidence, reviewing such evidence in a light most favorable to the prevailing party, and leaving the credibility of witnesses and weight assigned to their testimony to the determination of the district court. *Only A Mile*, ¶ 10. "Substantial credible evidence is such evidence which a reasonable mind could accept as adequate to support a conclusion. Evidence is considered substantial even if it is contradicted by other evidence, somewhat less than a preponderance, or inherently weak." *Russell v. Watkins & Shepard Trucking Co.*, 2009

17

MT 217, ¶ 18, 351 Mont. 297, 211 P.3d 864. When conducting a review for substantial credible evidence after a bench trial, the "district court's findings will be upheld even if the evidence could have supported different findings." *Lyndes*, ¶ 15 (citing *Brimstone Mining*, ¶ 20). "The test of substantial credible evidence allows for reversal only if there is an absence of probative facts to support the verdict." *Benson v. Diverse Comput. Corp.*, 2004 MT 114, ¶ 20, 321 Mont. 140, 89 P.3d 981.

¶36 On appeal, we are tasked with determining whether substantial credible evidence supports the District Court's finding that Cremer Rodeo established a prescriptive easement over the Lien and Medley Roads. If substantial evidence exists, the court's findings are not clearly erroneous and must be upheld, even if the evidence could support different findings. *Lyndes*, ¶ 15.

¶37 "A party seeking to establish a prescriptive easement must prove, by clear and convincing evidence, that there was open, notorious, exclusive, adverse, continuous and uninterrupted use for five years." *Lyndes*, ¶ 17 (citing *Schmid v. Pastor*, 2009 MT 280, ¶ 11, 352 Mont. 178, 216 P.3d 192). "Montana has consistently followed the minority rule, which holds that open, notorious, continuous, uninterrupted and exclusive use raises a presumption that the use was also adverse." *Albert*, ¶ 20 (collecting cases). A claim for a prescriptive easement can be defeated "by proof that the use was permissive." *Lyndes*, ¶ 17 (citing *Brown & Brown of MT*, ¶ 19). "If the claimant establishes the elements of prescriptive use, there is a presumption that the use is adverse to the servient estate and the

18

burden shifts to the owner of the servient estate to show that the use was permissive." *Lyndes*, ¶ 17 (citing *Brimstone Mining*, ¶ 21).

¶38   The District Court found Cremer Rodeo met all elements of a prescriptive easement claim, and therefore the burden of proving permissive use was shifted to McMullen.  The court found McMullen failed to meet her burden of showing permissive use.  On appeal, McMullen spends nearly all of her briefing on the permissive use issue, with a brief aside declaring Cremer Rodeo failed to present sufficient evidence showing its use was adverse or open and notorious.

¶39   "To be 'open and notorious,' the use of a claimed right in a prescriptive easement must give the landowner actual knowledge of the claimed right, or be of such a character as to raise a presumption of notice." *Heller v. Gremaux*, 2002 MT 199, ¶ 13, 311 Mont. 178, 53 P.3d 1259 (citation omitted).  "Open and notorious use can be established by showing that the condition of use was so obvious that the owner was not deceived and should have known of the claimant's use." *Albert*, ¶ 21.  "[T]here exists no requirement under Montana law that a prescriptive easement claimant verbally communicate a hostile intent." *Albert*, ¶ 28.

¶40   Here, the District Court found Cremer Rodeo met the open and notorious requirements of a prescriptive easement claim.  Evidence at trial showed that Cremer Rodeo, its employees, and Lahren (who operated a commercial guide service on Cremer Rodeo land) openly used the roads in question for years.  Testimony from the Cremer Rodeo witnesses asserted it used the roads without asking for permission and that Cremer

19

Rodeo occasionally performed maintenance to ensure access to its properties. This testimony, though contradicted by McMullen's testimony, is sufficient to constitute substantial credible evidence under our standard of review. There was no clear error regarding the court's findings that Cremer Rodeo satisfied the open and notorious elements of its prescriptive easement claim.

¶41 McMullen also asserts Cremer Rodeo failed to demonstrate its use of the roads was "adverse," but it is not necessary to address this element under the facts of this case as the District Court correctly found Cremer Rodeo met all other elements of a prescriptive easement claim. "[O]pen, notorious, continuous, uninterrupted and exclusive use raises a presumption that the use was also adverse." *Albert*, ¶ 20. Cremer Rodeo was therefore entitled to the presumption of adverse use and the burden shifted to McMullen to show permissive use. *Lyndes*, ¶ 17. As such, we need only address whether Cremer Rodeo's use of the Lien and Medley Roads was based on permissive use, in this case "neighborly accommodation."

¶42 McMullen asserts the fact that Cremer Rodeo's use of the Lien and Medley Roads was permissive and based on neighborly accommodation was undisputed and based on a 1991 handshake agreement between her predecessors and Cremer Rodeo. Cremer Rodeo highly disputes this fact, as did the District Court, who conducted a three-day bench trial on the matter before determining McMullen's testimony on the matter was less credible than that of Cremer Rodeo and her evidence of permissive use was insufficient. As recounted in the District Court's findings of fact, Ronda Johnston testified that Cremer

Rodeo continued to use the roads after Sweet Grass County abandoned County Road 6A "without permission from anyone based on the belief it had a right to do so." Rod Johnston testified similarly. Ronda, Rod, and Jake Johnston all testified the first barrier on the Lien Road was not installed until after McMullen purchased the property, several years after the road was abandoned in 1991. George Cremer testified he had been using the Lien and Medley Roads since the 1930s, never asked permission to use the roads from anyone, and continued to use the roads in the same manner as before after the county abandoned the road. Both George Cremer and Matt Cremer testified to performing repairs on the Lien and Medley Roads. Larry Lahren testified that he leased Cremer Rodeo property in the past to operate a guide service and accessed the property via the Lien Road and Medley Road, asking no one besides Cremer Rodeo for permission to use those roads. Based on this testimony, the District Court found that Cremer Rodeo "used the old Lien Road and the Medley Spur under a claim of right." The court found that to be the case for the Lien Road since its abandonment by the county in 1991, and since Cremer Rodeo purchased the property in 1938 or 1939 for the Medley Road. After a three-day trial, the District Court also specifically found "the testimony of the Cremer witnesses to be more credible and more reasonable tha[n] the testimony of McMullen and McMullen's witnesses," and further found "the Cremer witnesses' testimony regarding the use of the roads that are the subject of the asserted prescriptive easements to be more credible and more reasonable than the testimony of the McMullen witnesses on these matters." "We do not reweigh the evidence presented nor do we judge the credibility of the witnesses, nor do we review the

21

evidence to determine if it supports a different decision than that reached by the court." *Only a Mile*, ¶ 11 (citing *Combs-DeMaio Living Tr. v. Kilby Butte Colony, Inc.*, 2005 MT 71, ¶ 9, 326 Mont. 334, 109 P.3d 252).

¶43 Reviewing all of this testimony and evidence in the light most favorable to Cremer Rodeo, as the prevailing party, we do not find that McMullen's evidence of permissive use was undisputed. There was evidence presented that the Cremer Rodeo parties asserted they used the roads as a right, not because Lien had expressly given permission to use the roads in 1991. Although McMullen, who did not own the land in 1991, asserted the use of the roads following that time was based on permission, and a County Commissioner at the time the road was abandoned testified that she believed the landowners "would accommodate each other" after the road abandonment, the record does not reveal that express permission from Lien to Cremer Rodeo was ever granted. All of the Cremer Rodeo witnesses testified they used the roads and never asked Lien for permission. "Implied acquiescence is not the same as permission." *Cremer v. Cremer Rodeo Land & Livestock Co.*, 192 Mont. 208, 211, 627 P.2d 1199, 1201 (1981) (citations omitted). Indeed, "possession may be adverse even though the owner does not interfere [with] entry and the possessor understands that there will be no future interference with his possession." *Cremer*, 192 Mont. at 211, 627 P.2d at 1201. Though the county commissioners recommended the matter of access over the roads be reduced to easements in writing, such was never accomplished by Lien and Cremer Rodeo.

¶44 Reviewing the evidence presented at trial in the light most favorable to Cremer Rodeo, we do not find a complete "absence of probative facts to support the verdict." *Benson*, ¶ 20. The Cremer Rodeo witnesses testified that they maintained the roads on occasion. Maintenance of a roadway by a party asserting a prescriptive easement may be evidence the party's use was not based on permission. *See Hitshew v. Butte/Silver Bow Cty.*, 1999 MT 26, ¶ 18, 293 Mont. 212, 974 P.2d 650. Moreover, McMullen did not own the land in question when the road was abandoned in 1991. Cremer Rodeo was using both the Lien Road and the Medley Road when McMullen ultimately acquired the property several years after the county's abandonment. It was also using the roads when McMullen was leasing the property in the 1990s. McMullen did not take any action to limit Cremer Rodeo's use of the roads until 2005, with the installation of the locked gate to which she gave Cremer Rodeo the combination, before completely cutting off Cremer Rodeo's access beginning in 2013. Presented with this evidence, the District Court, who determined McMullen to be less credible than Cremer Rodeo's witnesses, correctly found McMullen's claim of neighborly accommodation to be insufficiently supported. "[McMullen] provides no evidence that she granted permission in fact or provided a license to [Cremer Rodeo]; her silence was mere acquiescence." *Walker v. Phillips*, 2018 MT 237, ¶ 24, 393 Mont. 46, 427 P.3d 92. If McMullen believed she was granting the use of the roads to Cremer Rodeo as a neighborly accommodation, it was incumbent upon her to say so under the facts of this case, particularly when she had been observing them using the roads for years prior

to her obtaining ownership of the property.[4]  "The fact that a neighbor does not interfere with the use of an easement 'because [she] wanted to get along and be [a] good neighbor does not transform [her] claim into one based upon mere neighborly accommodation.'" *Walker*, ¶ 23 (quoting *Lyndes*, ¶ 22).  Substantial evidence supports the District Court's determination in this regard as well, because to grant permission "'means more than mere acquiescence; it denotes the grant of a permission in fact or a license.'"  *Walker*, ¶ 23 (quoting *Lyndes*, ¶ 19).  It is immaterial that an argument could be made that this evidence was weaker or contradicted by other evidence, so long as it is adequate to support the District Court's conclusion.  *Russell*, ¶ 18.  Indeed, a review of the complete record in this case shows there is contradictory "evidence [which] could have supported different findings."  *Lyndes*, ¶ 15.  But because there is substantial credible evidence to support the

---

[4] The Dissent asserts this conclusion is "contrary to our well-established case law" and that "McMullen's 'silence' in not expressly granting Cremer Rodeo permission to use the roadways does not equate to 'mere acquiescence.'"  Dissent, ¶ 54.  In support of this assertion, the Dissent describes *Walker* as "holding mere acquiescence regarding property use does not rise to the level of permissive use."  Dissent, ¶ 54.  In *Walker*, we were presented with a new landowner asserting "neighborly accommodation" to defeat a prescriptive easement claim after observing her neighbors using a driveway for several years without inquiring about their use or taking action regarding the use, before putting up a gate and claiming she was simply ending her neighborly accommodation.  In that case, we found that landowner "provide[d] no evidence that she granted permission in fact or provided a license to the Walkers; *her silence was mere acquiescence*."  *Walker*, ¶ 24 (emphasis added).  While it is true "periodic express grants of permission are not required to maintain the permissive character of the use, especially where the use remains essentially the same," *Larsen v. Richardson*, 2011 MT 195, ¶ 59, 361 Mont. 344, 260 P.3d 103, here the District Court found this case to be directly analogous to *Walker*, where a new owner attempts to block the access of longstanding users by claiming an end to "neighborly accommodation" without sufficiently demonstrating there was an express grant of permission in the first place.  We rejected such an attempt in *Walker* by noting that new owner's "silence" was in fact "mere acquiescence." *Walker*, ¶ 24.  Our similar conclusion here under facts the District Court noted to be analogous to those of *Walker* is not, then, contrary to longstanding precedent.

24

District Court's prescriptive easement finding, even in the face of some evidence which could tend to show permissive use, the court's prescriptive easement finding must be upheld. *Lyndes*, ¶ 15. Our conclusion in this regard is merely the result of reviewing the evidence presented at trial in the light most favorable to the prevailing party, as we are required to do, *Only a Mile*, ¶ 10, and determining there is not a complete "absence of probative facts to support the verdict." *Benson*, ¶ 20. It is also in tune with our decision in *Walker*, where a new landowner observed her neighbors using a driveway for several years without inquiring about their use or taking action regarding the use, before putting up a gate and claiming she was simply ending her neighborly accommodation. In that case, we found the new owner's claim of neighborly accommodation failed because her earlier silence was acquiescence. *Walker*, ¶ 24. The District Court's similar conclusion in this case, which specifically cited to our *Walker* decision when determining McMullen's permissive use evidence was insufficient, is supported by substantial credible evidence.

¶45     The District Court specifically held in Conclusion of Law W that "[s]imilar to the situation in *Walker v. Phillips*, while McMullen asserts that Cremer's use began out of permissive courtesy and neighborly accommodation, she has provided insufficient evidence to support this claim. [*Walker*, ¶ 24]. This permissive courtesy and neighborly accommodation if it existed, occurred after McMullen purchased the property." The Lien Road was abandoned in 1991, but McMullen did not own it until approximately 10 years later—more than the 5 years needed for a prescriptive easement. The District Court continued in Conclusion of Law X, holding that "[a]s a result, the record indicates that

25

McMullen cannot overcome the presumption of adverse use. Moreover, Cremer's evidence and testimony establishes that its use of the Lien Road and the Medley Spur Road was also adverse." The District Court did not conclude that neighborly accommodation was adverse use; it correctly concluded, based on the facts found, that McMullen did not present sufficient evidence to show neighborly accommodation and it is her burden to show permissive use. *Lyndes*, ¶ 17. Because McMullen failed to meet her burden, the District Court's conclusion of law that Cremer Rodeo obtained a prescriptive easement is correct.

¶46 If we were to review this matter on a blank slate, without deference to Cremer Rodeo as the prevailing party following trial and to the District Court's credibility determinations, the evidence could potentially be weighed differently to obtain a different result. That is not the proper standard of review following a civil bench trial, however, and the District Court, which presided over the three-day trial and was in the best position to observe the testimony and demeanor of the witnesses, is entitled to deference in its determination that Cremer Rodeo obtained a prescriptive easement because substantial credible evidence supports the court's findings.

¶47 The District Court's findings of fact, entered after a lengthy bench trial, were not clearly erroneous when viewed in the light most favorable to Cremer Rodeo as the prevailing party. While the evidence relied on by the District Court to determine Cremer Rodeo's use of the Lien and Medley Roads was not based on permission may have been weaker than some of the evidence presented in favor of permissive use, it nonetheless constituted substantial credible evidence and is entitled to deference. This is particularly

26

true when the credibility of the parties to a "handshake" deal is determinative, and, after viewing three days of testimony, the District Court specifically found the testimony of the Cremer Rodeo witnesses "more credible" than McMullen and her witnesses. The findings of fact underlying the court's prescriptive easement determination are supported by substantial credible evidence and its conclusions of law are correct.

## CONCLUSION

¶48    The District Court did not err when it denied McMullen's motion for summary judgment regarding Cremer Rodeo's prescriptive easement claim, did not abuse its discretion by allowing Cremer Rodeo to amend its complaint to assert a claim over the Medley Road, and did not err when it determined the amended complaint related back to the original complaint. The court's determination, after presiding over a three-day bench trial, that Cremer Rodeo obtained a prescriptive easement over the Lien and Medley Roads is supported by substantial credible evidence.

¶49    Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR

27

Justice Laurie McKinnon, dissenting.

¶50     The Court departs from precedents under which we have found that "neighborly accommodation" defeats a claim of adverse use.  In my view, the Court errs, as did the District Court, in determining there was substantial credible evidence that Cremer Rodeo obtained a prescriptive easement over the Lien and Medley Roads.  After a careful review of the trial testimony, the evidence supports only one finding:  that Cremer Rodeo's use was permissive and rooted in neighborly accommodation.  I dissent from the Court's contrary holding.[1]

¶51     The Court correctly identifies the necessary appellate standard of review as "clearly erroneous" for a district court's factual findings.  Opinion, ¶¶ 14, 35; *Pedersen v. Ziehl*, 2013 MT 306, ¶ 10, 372 Mont. 223, 311 P.3d 765.  However, the Court misapplies this standard.  While the Court notes that a finding of fact is clearly erroneous if it is not "supported by substantial credible evidence," it ignores the remainder of the standard.  Opinion, ¶ 35.  The clearly erroneous standard allows this Court to review a district court's findings of fact in other scenarios: when the district court "misapprehended the effect of the evidence or if, upon reviewing the record, [this Court] is left with the definite and firm conviction that the district court made a mistake."  *In re S.T.*, 2008 MT 19, ¶ 8, 341 Mont. 176, 176 P.3d 1065 (citing *In re L.H.*, 2007 MT 70, ¶ 13, 336 Mont. 405, 154 P.3d 662).  The lower court record presents a scenario that justifies this Court to make a holding

---

[1] In my opinion, it is unnecessary to address the parties' arguments regarding the propriety of the District Court allowing Cremer Rodeo to amend its complaint.  My determination that there was no prescriptive easement over Lien and Medley Roads is dispositive.

contrary to the District Court's ruling because the court misapprehended the effect of the evidence when *every witness* at trial testified that the use of the Lien and Medley Roads arose out of neighborly accommodation, thereby defeating a prescriptive easement claim. The District Court misapprehended the effect of the evidence and leaves me with "the definite and firm conviction" that the court made a mistake that warrants reversal.

¶52     The question here is not whether there are sufficient facts to support the District Court's judgment; I accept the District Court's findings of fact. Rather, the question here is whether the District Court's conclusions of law, accepting the findings of fact it made, are correct. The conclusion made by the District Court that Cremer Rodeo's claim of right was established by an abandoned road and a handshake agreement is incorrect, as a matter of law. The District Court's reasoning, which the majority adopts, that Cremer Rodeo's "claim of right" sprang from adverse use after abandonment of the county road, was incorrect because the "handshake" deal was either an attempt to create an express easement—which failed because it was never reduced to a written instrument as the commissioners recommended (*see Blazer v. Wall*, 2008 MT 145, ¶ 26, 343 Mont. 173, 183 P.3d 84; § 70-20-101, MCA)—or permission to use Lien Road among the landowners, which cannot, as a matter of law, establish adversity.

¶53     A prescriptive easement claim is defeated by undisputed proof that the use was permissive. *Lyndes v. Green*, 2014 MT 110, ¶ 17, 374 Mont. 510, 325 P.3d 1225 (citing *Brown & Brown of MT, Inc. v. Raty*, 2012 MT 264, ¶ 19, 367 Mont. 67, 289 P.3d 156).

29

Use beginning as permissive is presumed to continue as such, and cannot ripen into a prescriptive right absent a distinct and positive assertion of a hostile right:

> if permissive use is shown, no easement can be acquired since the theory of prescriptive easements is based on adverse use. If a use begins as a permissive use it is presumed to continue as such. In fact, if the use begins as a permissive use, it cannot ripen into a prescriptive right, no matter how long it may continue, unless there is a distinct and positive assertion of a right hostile to the owner.

*Pedersen*, ¶ 15 (internal quotations ommitted).

¶54 The District Court and this Court incorrectly determined that McMullen and her predecessors were obligated to tell Cremer Rodeo that they expressly grant it permission to use the Lien and Medley Roads to establish neighborly accommodation. Opinion, ¶ 44. The Court holds it was "incumbent upon [McMullen]" to tell Cremer Rodeo that she was granting use of the roads to Cremer Rodeo based on neighborly accommodation. Opinion, ¶ 44. This conclusion is contrary to our well-established case law. "[P]eriodic express grants of permission are not required to maintain the permissive character of the use, especially where the use remains essentially the same." *Larsen v. Richardson*, 2011 MT 195, ¶ 59, 361 Mont. 344, 260 P.3d 103. Nor is a new grant of permission required if land ownership changes. *Pedersen*, ¶ 26. Importantly, when use is pursuant to neighborly accommodation, the user does not need to ask for permission at every crossing; permission is implied based upon custom. *Kessinger v. Matulevich*, 278 Mont. 450, 457, 925 P.2d 864, 868-69 (1996). Montana has a rich custom and heritage, beginning in the homesteading days, of allowing one neighbor to cross the land of another as a matter of

30

general understanding between the two. In *Rathbun v. Robson*, 203 Mont. 319, 661 P.2d 850, (1983), we observed:

> Several witnesses testified concerning local customs that began in the homesteading days concerning access across another's land. There existed an understanding among landowners that permission was not required every time a person needed to cross his neighbor's land. Permission was automatic if the individuals closed the gates and respected his neighbor's property.

*Rathbun*, 203 Mont. at 322, 661 P.2d at 852. Accordingly, McMullen's "silence" in not expressly granting Cremer Rodeo permission to use the roadways does not equate to "mere acquiescence." Opinion ¶ 44; *see Walker v. Phillips*, 2018 MT 237, ¶¶ 23-24, 393 Mont. 36, 427 P.3d 92 (holding mere acquiescence regarding property use does not rise to the level of permissive use).[2]

¶55    We have held that "evidence of a local custom of neighborly accommodation or courtesy, without more, is sufficient to establish permissive use." *Keebler v. Harding*, 247 Mont. 518, 521, 807 P.2d 1354, 1356 (1991). In *Taylor v. Petranek*, 173 Mont. 433, 438, 568 P.2d 120, 123 (1977) (overruled in part on other grounds), this Court stated:

> Here the record is replete with testimony from both plaintiff's and defendant's witnesses that the homesteaders who initially lived in the area developed [the] common practice of allowing others to cross their lands to

---

[2] The Court holds that because the District Court found the facts of this case are analogous to *Walker*, the Court's decision is "not, then, contrary to longstanding precedent." Opinion, ¶ 44 n.4. However, in *Walker*, this Court rejected the plaintiff's claim that the use was permissive because she "provide[d] no evidence to support that claim. The Walkers were using the driveways when Phillips acquired her property. Phillips never spoke with the Walkers or took any action regarding their use of the roads until she installed gates to block their access . . . her silence was mere acquiescence." *Walker*, ¶ 24. Unlike in *Walker*, there is overwhelming evidence from both McMullen and Cremer Rodeo that the original and longstanding use of the Lien and Medley roads was permissive in nature and firmly understood by all parties as neighborly accommodation. The District Court's conclusion that the two cases are factually similar further demonstrates that the District Court misapprehended the effect of the trial testimony.

31

reach Suffolk. This evidence is sufficient to support a use permissive in its inception *and not under a claim of right.*

(Emphasis added.) Thus, neighborly accommodation defeats a prescriptive easement when the use arises from that accommodation. *Lyndes*, ¶ 20. "If the user began by the permission of the owner, it will not ripen into an adverse or hostile right until notice of such adverse user is brought home to the owner and the user continued thereafter for the statutory period." *Wilson v. Chestnut*, 164 Mont. 484, 491, 525 P.2d 24, 27 (1974); *see also Taylor*, 173 Mont. at 438, 568 P.2d at 123 ("Although a use permissive in its inception may ripen into a prescriptive right, it cannot do so unless there is a later distinct and positive assertion of a right hostile to the owner, which must be brought to the attention of the owner, and the use continued for the full prescriptive period."). When the use is by "express or implied permission of the owner, continuous use of the way by the neighbor is not adverse and does not ripen into a prescriptive right." *Amerimont, Inc. v. Gannett*, 278 Mont. 314, 319, 924 P.2d 1326, 1330 (1996).

¶56 The District Court committed clear error when it misapprehended the effect of substantial credible evidence, which is replete with testimony establishing that the use of the roadways was customary among ranchers in the area. Every witness—including Cremer Rodeo's witnesses—testified they knew the road had been abandoned and that area landowners had agreed they would accommodate each other by allowing neighbors to cross their lands using the roads. This arrangement was in place since 1991. Both parties described the use of the roads between 1991 and 2013 as based on neighborly accommodation. George Cremer testified that "[a]ll them homesteads out there used that

32

road" and that his neighbors "let [him] go down those roads." Matt Cremer testified it was "pretty much a general consensus to all the neighbors that we weren't trying to keep the neighbors out . . . ." And Rod Johnston, testifying on behalf of Cremer Rodeo, said there was "an agreement amongst the landowners in the area to allow each other to go across the Lien Road." A county commissioner testified she voted to abandon the Lien Road based on her understanding that the Cremer and Lien families, and other landowners, would allow each other to continue to use the road after abandonment. Notably, Jake and Leo Cremer, on behalf of Cremer Rodeo, testified that the permission granted between neighbors to allow use of the Lien Road was "common Cremer family knowledge." McMullen also corroborated the testimony of Cremer Rodeo's witnesses that the use was based on neighborly accommodation.

¶57 Further, every witness acknowledged a local custom of allowing neighboring ranchers to use each other's roads. Cremer Rodeo's witnesses testified the practice of allowing neighbors to use other's roads was the norm and commonly understood and accepted among the landowners in the area. There was "general consensus" that all landowners would accommodate each other's use of a way to cross the other's land. Likewise, McMullen testified all the neighbors in the area "help each other out" and allow the use of each other's roads. In fact, McMullen shared her gate combination with Matt, and Matt would share Cremer Rodeo's combinations with her since this was the "neighborly thing to do."

33

¶58 The District Court's conclusion of law, which the Court adopts, that the "claim of right" arose when Lien Road, having once been a public road, was subsequently abandoned based on a "handshake agreement" is clearly erroneous. A "handshake agreement" that gives permission to cross does not, under Montana law, establish adversity. "An easement cannot be created except by an instrument in writing, by operation of law, or by prescription." *Blazer*, ¶ 26; *Wilkinson, LLC v. Scott & Cindy Erler, LLP*, 2021 MT 177, ¶ 9, 404 Mont. 541, 491 P.3d 704. Without adversity, there is no prescriptive easement; and Cremer Rodeo's "claim of right" does not otherwise arise as an operation of law. Further, the agreement was never reduced to writing and thus cannot be a written and express easement. In the absence of an express written agreement, what was left was a verbal agreement to accommodate one another—*i.e.*, permissive, and not hostile use. Everything that followed the County's abandonment of the Lien Road was a continuation of the neighbors' permission to allow each other to use the road, also known as neighborly accommodation. Neighborly accommodation does not equate to adverse use, and it is further well-established in Montana law that neighborly accommodation is permissive. Accordingly, there is no "claim of right" when the use is through neighborly accommodation and any neighbor remained free, absent an express written agreement or easement, to revoke their permission to use the road.

¶59 The Court provides that the District Court found McMullen failed to present sufficient credible evidence to show neighborly accommodation and holds that we should afford the court deference in its evidentiary findings. Opinion, ¶ 47. However, the District

34

Court's credibility determinations are immaterial because *all* the witnesses testified that the use of Lien and Medley Roads arose out of a neighborly courtesy and neighborly accommodation. The facts supporting neighborly accommodation were undisputed and probative to support the District Court's verdict. *See Benson v. Diverse Computer Corp.*, 2004 MT 114, ¶ 20, 321 Mont. 140, 89 P.3d 981 (stating reversal is justified when "there is an absence of probative facts to support the verdict"). The District Court determined use was adverse because the roads were enjoyed by all without any neighbor having to ask for permission. However, permission was implied and automatic, consistent with the doctrine of neighborly accommodation. *Rathbun*, 203 Mont. at 322, 661 P.2d at 852. There was a common understanding between all the landowners that permission was not required every time a neighbor needed to cross another's land. "[E]vidence of a local custom of neighborly accommodation or courtesy, *without more*, is sufficient to establish permissive use." *Keebler*, 247 Mont. at 521, 807 P.2d at 1358 (emphasis added). Here, the evidence overwhelmingly supports "a use permissive in its inception and not under a claim of right." *Taylor*, 173 Mont. at 438, 568 P.2d at 123. Therefore, as a matter of law, the District Court erred in concluding that evidence which established neighborly accommodation supported a "claim of right" to use the roads. An oral agreement made at the time the road was abandoned that one neighbor will accommodate another neighbor's crossing of their land does not constitute, as a matter of law, a claim of right for purposes of establishing a prescriptive easement.

35

¶60 Lastly, the Court errs by affirming the District Court's determination that Cremer Rodeo met the statutory period to establish a prescriptive easement, reasoning that the period of adverse use began when the County abandoned the road in 1991 and continued until McMullen purchased the property in 2001. Opinion, ¶ 45. If use begins as permissive, it may ripen into an adverse use when there is a later and distinct positive assertion of a right hostile to the owner. *Taylor*, 173 Mont. at 438, 568 P.2d at 123. Montana's statutory prescriptive period is five years. Section 23-2-322, MCA. The failure to prove any element for the full statutory period is fatal to the entire claim. *Ray v. Nansel*, 2002 MT 191, ¶¶ 22-23, 311 Mont. 135, 53 P.3d 870. "Even though all elements are necessary to establish a prescriptive easement, this Court has stated that if the period of time in question is less than the statutorily prescribed five years, it is 'immaterial' whether the [claimant's] use was adverse or permissive—no prescriptive easement can be perfected without passage of the required five years." *Glenn v. Grosfield*, 274 Mont. 192, 192, 906 P.2d 201, 203 (1995).

¶61 Cremer Rodeo has failed to establish that it had rights to use the Lien and Medley Roads for the required five-year statutory period. The period of adverse use started in 2013 when McMullen found the locks broken off the gate at the Lien Road entrance—acts that were attributed to Cremer Rodeo—and when she revoked "everyone's permission" to continue using the roadways. The period of adverse use thus began in 2013 and ended three years later, in 2016 when Cremer Rodeo filed its complaint. Three years is an insufficient amount of time under the statute to establish a prescriptive easement.

¶62 In my view, the Court has committed the same error as did the District Court. First, there is not substantial credible evidence of adverse use. Rather, upon careful review of the trial testimony, I would conclude the District Court misapprehended the effect of undisputed evidence. To support the Court's holding, it relies on conclusory and self-serving assertions by Cremer Rodeo that the use of the Lien and Medley Roads was pursuant to a "claim of right" that arose out of the County's abandonment in 1991. Second, the conclusions of law drawn by this Court and the District Court are incorrect and contrary to our precedent. The evidence in the record supports only one finding: that use of the Lien and Medley Roads was by neighborly accommodation and, accordingly, permission was not required at every crossing. The fact that McMullen or her predecessors did not grant express permission to Cremer Rodeo is not a fact which supports adverse use when the record clearly establishes neighborly accommodation. The District Court misapprehended the effect of this evidence and arrived at conclusions inconsistent with our caselaw. Moreover, the District Court erroneously relied on the "absence of probative facts to support [its] verdict." *See Benson*, ¶ 20. The Court misapplies the clearly erroneous standard to affirm the District Court's finding that "neighborly accommodation" does not defeat adverse use under a so-called "claim of right," which is incorrect as a matter of law.

¶63 I dissent.

/S/ LAURIE McKINNON

Justices Beth Baker and Jim Rice join in the dissenting Opinion of Justice McKinnon.

/S/ BETH BAKER
/S/ JIM RICE